## HOWE SCALE COMPANY *v.* WYCKOFF, SEAMANS & BENEDICT.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 130. Argued January 16, 17, 1905.—Decided April 24, 1905.

In an action to restrain the use of a personal name in trade, where it appears that defendant has the right to use the name and has not done anything to promote confusion in the mind of the public except to use it, complainant's case must stand or fall on the possession of the exclusive right to the use of the name.

A personal name—an ordinary family surname such as Remington—cannot be exclusively appropriated by any one as against others having a right to use it; it is manifestly incapable of exclusive appropriation as a valid trade-mark, and its registration as such can not in itself give it validity.

Every man has a right to use his name reasonably and honestly in every way, whether in a firm or corporation; nor is a person obliged to abandon the use of his name or to unreasonably restrict it.

It is not the use, but dishonesty in the use, of the name that is condemned, and it is a question of evidence in each case whether there is false representation or not.

One corporation cannot restrain another from using in its corporate title a name to which others have a common right.

Where persons or corporations have a right to use a name courts will not interfere where the only confusion results from a similarity of names

and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one person for that of another, and if defendant is not attempting to palm off its goods as those of complainant the action fails.

THIS was a bill exhibited, in September, 1898, by Wyckoff, Seamans & Benedict, a corporation of New York, in the Circuit Court of the United States for the District of Vermont, against the Howe Scale Company of 1886, a corporation of Vermont, alleging that complainant had been for many years engaged in the manufacture and sale of typewriting machines known in the markets and to the trade and public, and referred to, identified, offered for sale and sold as the "Remington typewriter," and the "Remington standard typewriter," and that the words "Remington" and "Remington standard" had been registered in the Patent Office under the act of Congress; and charging defendant with fraud and unfair competition in making use of the corporate name "Remington-Sholes Company" and the designations "Remington-Sholes," "Rem-Sho" and "Remington-Sholes Company," in advertising for sale, offering for sale and selling typewriting machines; and praying for an accounting, and for an injunction restraining defendant from advertising or offering for sale or selling typewriting machines manufactured by the "Remington-Sholes Company," bearing the name "Remington" or "Remington-Sholes" or "Rem-Sho" or "Remington-Sholes Company," and from advertising or offering for sale or selling any such machines under said designation, or under any designation of which the name "Remington" was a part.

Defendant was the sales agent of the "Remington-Sholes Company," a corporation of Illinois, and was engaged in selling the typewriting machines called the "Remington-Sholes" or "Rem-Sho" typewriter, which were manufactured by the Illinois corporation at Chicago. The right to use those designations in the way they were used was asserted by the defense, of which the Remington-Sholes Company, and subsequently the Fay-Sholes Company, had charge. The word

"Rem-Sho" was alleged to have been registered in the Patent Office as a trade-mark.

The Circuit Court found that defendant's use of the name "Remington" was an unjustifiable invasion of complainant right to the use of that name, and entered a decree, August 14, 1901, denying an account for gains and profits, without prejudice to the recovery thereof from the Remington-Sholes Company; and perpetually enjoining the use of the designation "Remington," or "Rem-Sho," as the name or part of the name of any typewriting machine whatsoever manufactured by the "Remington-Sholes Company," or by defendant, or any person or concern, and from selling, offering or advertising for sale in any manner, typewriting machines so manufactured "under the name of or as 'Remington-Sholes' or 'Rem-Sho,' or by any designation of which the word 'Remington' or the abbreviation 'Rem' shall constitute a part." 110 Fed. Rep. 520.

The case was carried by appeal to the Circuit Court of Appeals for the Second Circuit, and was there heard before Circuit Judges Wallace, Lacombe and Coxe. April 20, 1903, the decree was reversed, without costs, and the cause remanded "with instructions to decree in favor of complainant only as to the name 'Remington.'" Lacombe, J., delivered an opinion in support of that decree, Coxe, J., concurring in the conclusion because "unable to distinguish this cause from *Rogers* v. *Rogers*, 70 Fed. Rep. 1017;" Wallace, J., dissented, holding that the decree of the Circuit Court should be reversed with instructions to dismiss the bill. 122 Fed. Rep. 348.

It appeared that the mandate of the Circuit Court of Appeals was issued April 22, 1903, and that the Circuit Court entered a final decree, June 22, 1903, enjoining the use of the word "Remington," and also that after the original decree of the Circuit Court the Remington-Sholes Company changed its corporate name to that of Fay-Sholes Company, and ceased to make its machines marked with the registered trade-mark "Rem-Sho," and with the inscription "Remington-Sholes Company, Mfrs., Chicago."

It also appeared that in October, 1901, complainant filed its bill in the Circuit Court of the United States for the Northern District of Illinois against the Remington-Sholes Company, for alleged unfair trade competition, and that, after answer filed, an order was entered staying proceedings until the determination of this cause, and providing that if this cause resulted in favor of complainant, that cause should be sent at once to an accounting.

On petition of the Howe Scale Company of 1886, and the Fay-Sholes Company, filed October 22, 1903, and on petition of Wyckoff, Seamans & Benedict, filed December 21, 1903, writ and cross writ of certiorari were granted.

For some years prior to 1860 E. Remington and his three sons were engaged at Ilion, New York, in the manufacture of firearms under the firm name of E. Remington & Sons. The father died in 1863, and in 1865 the sons, who had continued the business, organized the corporation E. Remington & Sons under the laws of New York. About 1866 E. Remington & Sons produced a breech-loading rifle that obtained great vogue throughout the world, and was and is known as "The Remington Rifle." The "Remington Sewing Machine" and other machines were also manufactured and sold.

In 1873 E. Remington & Sons began the manufacture of a typewriting machine, the most important features of which were invented and patented by Christopher Latham Sholes. It was the pioneer writing machine and called "The Typewriter," and "The Sholes and Glidden Typewriter," and in 1880 the names "Remington" and "Remington Standard" were used instead, as they have since been continuously.

One of complainant's witnesses testified that the typewriter was called "Remington" "for the reason that the name Remington was known the world over, owing to their building guns for foreign governments, building sewing machines, and having one of the largest manufacturing works in the world." In March, 1886, the typewriter branch of the business of E. Remington & Sons was sold to Messrs. Wyckoff, Seamans & Bene-

dict, and there was also transferred the exclusive right to the name "Standard Remington Typewriter," by which name the assignment states the machines were generally known. The assignment contained the express reservation to E. Remington & Sons of the right to engage in the manufacture and sale of typewriters at any time after ten years from its date.

Complainant's typewriting machines have been for years conspicuously marked with the name "Remington" and with a large "Red Seal" trade-mark on the paper table and frame; the name and address "Remington Standard Typewriter, manufactured by Wyckoff, Seamans and Benedict, Ilion, N. Y., U. S. A.," on the cross bar in front of the key board; the words and figures "No. 6 Remington Standard Typewriter No. 6" on the front of the base, and the words "This machine is protected by 67 American and foreign patents" on the back. "Remington" and "Remington Standard" and the "Red Seal" have all been registered by complainant as trade-marks. .

In 1892 Z. G. Sholes, a son of Christopher Latham Sholes, · invented a typewriting machine, and early in 1893 the Z. G. Sholes Company was organized under the laws of Wisconsin for its manufacture, but the stock of the company was never issued, and no machine was ever made or sold by it. Later in the year Franklin and Carver Remington, sons of Samuel Remington, formerly president of the E. Remington & Sons corporation, bought a three-fourths interest in Sholes' invention, Sholes retaining one-fourth, and a like interest in the stock of the company, paying from eight to nine thousand dollars. They entered into a written agreement with Sholes, which provided, among other things, that "no further, other or different business of any kind or nature shall be transacted by said corporation or in its behalf, except that the same may be dissolved, in due form of law, as soon as practicable hereafter." Franklin Remington gave his entire time to the promotion of the enterprise, and advanced for expenses from six to seven thousand dollars in addition to the original investment of eight or nine thousand. The name of the machine ·

was subsequently changed by Sholes from "The Z. G. Sholes" to "The Remington-Sholes." Thereafter the Remingtons and Sholes induced Head and Fay of Chicago to furnish funds to manufacture the Remington-Sholes machine; and a corporation organized in the spring of 1894 for its manufacture was designated the "Remington-Sholes Typewriter Company." This company purchased tools and machinery, and its typewriting machines were placed on the market in December, 1894. In the fall of 1896 the company had become so deeply indebted that it became necessary to take steps to meet its obligations, and at a meeting of the stockholders December 14, 1896, it was resolved that the property and assets be sold at public auction, the buyer to have the privilege of using all or any part of the company's corporate name. Thereupon Fay purchased in his own name, but as trustee for himself and other stockholders, the whole of the assets of the company, together with its good will, the exclusive right to use its trademarks, etc., and for some months carried on the business at the factory formerly occupied by the Remington-Sholes Typewriter Company. The charter of that company was surrendered in April, 1897, and the Remington-Sholes Company was incorporated under the laws of Illinois, and purchased all the assets, good will, trade-marks, trade names, etc., theretofore belonging to Fay and the Remington-Sholes Typewriter Company. And the new company continued at the same factory and through the same, instrumentalities to manufacture and sell its typewriters. It was stipulated that the common stock in the new company "was divided among the stockholders in keeping with the amounts of cash actually invested by them in the Remington-Sholes Typewriter Company, and that the allotment of said common stock to said Franklin Remington was in keeping with such plan."

The machines made and sold by the Remington-Sholes Typewriter Company were plainly marked with the words "Remington-Sholes, Chicago." After the new company entered on the business the trade-mark "Rem-Sho" was adopted

(registered as a trade-mark October 19, 1897), and the machines were also marked on the cross bars with the words "Remington-Sholes Company, Mfrs., Chicago." The Remington-Sholes Typewriter Company widely advertised that its machine "was not the Remington Standard Typewriter," and the catalogues circulated by the Remington-Sholes Company declared: "We state, then, emphatically that this company has no connection whatever with that well-known and excellent machine, the Remington Standard Typewriter, and caution possible customers against confusing the 'Rem-Sho' with that machine or any other."

*Mr. Austen G. Fox* and *Mr. George P. Fisher, Jr.*, with whom *Mr. James H. Peirce* and *Mr. William Henry Dennis* were on the brief, for petitioners:

A personal name, such as the name "Remington," is incapable of exclusive appropriation, and its registration in the Patent Office cannot render it a valid trade-mark. *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 169; *Brown Chemical Co.* v. *Myer*, 139 U. S. 540; *McLean* v. *Fleming*, 96 U. S. 245; *Columbia Mill Co.* v. *Alcorn*, 150 U. S. 460; *Harson* v. *Halkyard*, 46 Atl. Rep. 271; *Jamieson & Co.* v. *Jamieson & Co.*, 15 R. P. C. 169; *Canal Co.* v. *Clark*, 13 Wall. 311; *Elgin National Watch Co.* v. *Illinois Watch Case Co.*, 179 U. S. 665; *Sarrazin* v. *Irby Co.*, 93 Fed. Rep. 625; *Brower* v. *Boulton*, 52 Fed. Rep. 389; *Centaur Co.* v. *Marshall*, 97 Fed. Rep. 785.

A man's name is his own property and he has the same right to its use and enjoyment as he has to that of any other species of property, the only restriction imposed by this court upon the use of a personal name being that it shall be a reasonable, honest and fair exercise of such right. *Brown Chemical Co.* v. *Myer; McLean* v. *Fleming; Singer Mfg. Co.* v. *June Mfg. Co., supra.*

To a personal name (or like generic name) no secondary signification can attach that will diminish the right of any one bearing such name to use it in every honest way and for

every legitimate purpose; and where a personal or generic name has acquired a secondary signification, the most that can be required of a person having a right to use such name is that he shall accompany its use "with such indications as to show that the thing manufactured is the work of the one making it." *Holzapfel Co.* v. *Rahtjens Co.,* 183 U. S. 1; *Baker* v. *Baker,* 115 Fed. Rep. 297; *Duryea* v. *National Starch Co.,* 79 Fed. Rep. 651.

In cases like that at bar, the ground of relief is the injury to a complainant by the passing off of defendant's wares for those of complainant, and where a complainant invariably marks his wares with his name, address and a designating mark, the fact that a defendant has invariably marked *his* wares with *his own* name and address and with a different distinctive mark, is most persuasive of the absence of any intent to pass off his wares as and for complainant's. Cases *supra* and *Goodyear Rubber Co.* v. *Goodyear Rubber Mfg. Co.,* 128 U. S. 598; *Corbin* v. *Gould,* 153 U. S. 328; *Coats* v. *Merrick Thread Co.,* 149 U. S. 562; *Lorillard* v. *Peper,* 86 Fed. Rep. 956; *Kahn* v. *Diamond Steel Co.,* 89 Fed. Rep. 706; *Proctor & Gamble Co.* v. *Globe Ref. Co.,* 92 Fed. Rep. 357; *Dadirrian* v. *Yacubian,* 98 Fed. Rep. 872; Sebastian on Trade Marks, 4th ed., 123.

The issuing of cautionary circulars is recognized by the courts as clearly repugnant to any purpose to palm off defendant's wares for complainant's. Cases *supra* and *Boiler Co.* v. *Tripod Boiler Co.,* 142 Ill. Sup. 494; *Salt Co.* v. *Burnap,* 73 Fed. Rep. 818; *Walter Baker Co.* v. *Sanders,* 80 Fed. Rep. 889; *Allegretti Co.* v. *Keller,* 85 Fed. Rep. 643; *Menendez* v. *Holt,* 128 U. S. 514, 520; *Pittsburg Co.* v. *Pittsburg Co.,* 64 Fed. Rep. 841.

Where the name or mark adopted by a defendant is sufficiently different from that employed by a complainant to enable the ordinary purchaser, using reasonable care, to distinguish defendant's from complainant's goods, no injunction will issue. The name "Sholes" amply differentiates the com-

pound names "Remington-Sholes" and "Remington-Sholes Company" from the single name "Remington." Cases *supra* and *Liggett & Myers Co.* v. *Finzer,* 128 U. S. 182; *Meneely* v. *Meneely,* 62 N. Y. 427.

The courts have uniformly recognized that a man's use of his name in a firm name is a reasonable, honest and legitimate use. *National Starch Mfg. Co.* v. *Duryea,* 101 Fed. Rep. 117; *S. C.,* 79 Fed. Rep. 651; *Gilman* v. *Hunnewell,* 122 Massachusetts, 139; *English* v. *Publishing Co.,* 8 Daly (N. Y.), 375; *Marcus Ward & Co.* v. *Ward,* 61 Hun, 625; *Burgess* v. *Burgess,* 3 DeG. M. & G. 896; *Hardy* v. *Cutter,* 3 O. G. 468.

It being a general custom to employ personal names for corporations, no distinction can be made between the use of such names in a firm and in a corporation, since in both cases the names adopted are selected and artificial. *Baker* v. *Baker,* 115 Fed. Rep. 297, 303; *Celluloid Co.* v. *Cellonite Co.,* 32 Fed. Rep. 94; *Monarch* v. *Rosenfeld,* 39 S. W. Rep. 236; *Am. Cereal Co.* v. *Eli Pettijohn Co.,* 72 Fed. Rep. 903; *Scott S. & C. Co.* v. *J. W. Scott Co.,* 58 N. Y. Super. Ct. 379; *Employers' Co.* v. *Employers' Co.,* 61 Hun, 552; *Columbia Mill Co.* v. *Alcorn,* 150 U. S. 460.

The courts recognize that the business of a corporation or of a firm in which a man has his capital invested, and to which he devotes his whole time and energy is his business, and that he has a right to use his name in connection therewith.

Although it is true that there is no *necessity* for a man engaged in a corporation or in a firm to employ his name in connection therewith—since both firm and corporate names are alike artificial—this lack of necessity for using a personal name cannot affect the individual's *right* to so use it, because such use is a universally recognized legitimate and reasonable use of a personal name. *Turton & Sons* v. *Turton & Sons,* 42 Ch. D. 128; *Continental Ins. Co.* v. *Continental Assn.,* 96 Fed. Rep. 846; *Chivers & Sons* v. *Chivers & Co.,* 17 R. C. P. 420.

The decisions recognize family reputation as a valuable heritage and as an ample reason for the use by a man of his

name in the selection of a firm name and in its business. In this case defendant has never imitated complainant's signs, labels or other indicia, nor trespassed upon its good will, which complainant owns, but has simply availed in an honest way of the family reputation, which complainant does not own, of Mr. Franklin Remington, the general manager of the Remington-Sholes Company. See German decisions regarding name "Remington-Sholes," in *Newald* v. *Glogowski & Co.,* rendered by the Koenigliches Kammergericht, July 3, 1897, affirmed March 4, 1898, by the German Reichsgericht, and these decisions although not of controlling force, should be recognized as precedents. *Liebig Co.* v. *Libby, McNeill &c.,* 103 Fed. Rep. 87; *Centaur Co.* v. *Heinsfurter,* 84 Fed. Rep. 955; *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S. 169.

In considering a corporate name comprising one or more personal names, the impression is different from that conveyed, under certain circumstances, by a corporate name involving geographical or purely fanciful names. In such latter cases the public may assume that the corporation having the double name is a consolidation of two corporations, but even in such cases the courts have frequently refused to grant injunctions against defendants bearing the double names. *Merchants' Banking Co. of London* v. *Merchants' Joint Stock Bank,* L. R. 9 Ch. Div. 560; *London & Provincial Law Assurance Society* v. *London & Provincial Joint Stock Life Assurance Co.,* 17 L. J. (Ch.) 37; *London Assurance* v. *London & Westminster Assurance Corp., Ltd.,* 32 L. J. (Ch.) 664; *Colonial Life Assurance Co.* v. *Home & Colonial Assurance Co., Ltd.,* 33 Beav. 548; Kerly on Trade Marks, 2d ed., 510.

The Remington-Sholes Company never used its corporate name otherwise than as an entirety (except as its machines are marked "Rem-Sho", or in any manner tried to conceal or disguise its own identity.

While the appearance of the name "Remington" in the corporate name of the Remington-Sholes Company may tempt the curiosity of some persons to inquire as to the existence of

a connection between such company and complainant, the use of the name "Sholes" in such corporate name is a distinction so prominent that no reasonable person can fail to recognize it, and, if vested with common intelligence, to understand its significance. *Yost Typewriter Co.* v. *Typewriter Exchange Co.,* 19 R. P: C. 423; *Aerators, Ltd.* v. *Tollit,* 19 R. P. C. 419; *Heintz* v. *Lutz,* 146 Pa. St. 592.

Where a name is incapable of exclusive appropriation—like the name Remington—a court will not destroy the right of another to use such name but will direct its injunctive process against the specific abuse of the right, if any such has occurred. The sweeping decrees of the lower courts in the case at bar are therefore manifestly in error. *Singer Mfg. Co.* v. *June Mfg. Co., supra; Meriden Brittania Co.* v. *Parker,* 39 Connecticut, 450; *Ill. National Watch Co.* v. *Ill. Watch Case Co., supra.*

That defendant in the case at bar has not been guilty of any unfair trade competition (unless the use of the name "Remington-Sholes" be so regarded) is conclusively established by the record and has been unanimously so held by the Circuit Court of Appeals.

The record being devoid of any showing that there has ever been any deception or mistake or injury to complainant by reason of the use of the name "Rem-Sho," this court will not disturb the unanimous finding of the Court of Appeals allowing defendant's right to use such fanciful name.

Rem-Sho is a fanciful name and can be trade-marked. Brown on Trade Marks, §§ 273, 337; *Sterling Co.* v. *Eureka Co.,* 80 Fed. Rep. 105; *Amoskeag Mfg. Co.* v. *Trainer,* 101 U. S. 51, 56; nor can its suggestiveness detract from its character as a distinctive trade-mark. *Davis* v. *Kendall,* 2 R. I. 566; *Holt Co.* v. *Wadsworth,* 41 Fed. Rep. 34; 26 Am. & Eng. Ency. 282.

Cases cited by appellee are inapplicable, as in those cases the trade-mark was held illegal and adopted for purposes of deception and imitation.

As to what is necessary to establish a charge of unfair competition, see *Gorham Co.* v. *Emery &c. Co.,* 104 Fed. Rep. 243; *Brown Chemical Co.* v. *Meyer,* 139 U. S. 540; *Centaur Co.* v. *Marshall,* 97 Fed. Rep. 785; *Lorillard* v. *Peper,* 86 Fed. Rep. 956; *Sterling Co.* v. *Eureka Co.,* 80 Fed. Rep. 105; *Rogers* v. *Rogers Mfg. Co.,* 70 Fed. Rep. 1019; *Mueller Co.* v. *McDonally & Morrison Co.,* 132 Fed. Rep. 585; *Am. Washboard Co.* v. *Saginaw Co.,* 103 Fed. Rep. 281; *Coats* v. *Merrick Thread Co.,* 149 U. S. 562, 573; *Richardson & Boynton* v. *Richardson & Morgan,* 8 N. Y. 52; and cases cited *supra.*

Petitioner's machine is the only typewriter actually made by a Remington, and equity will not enjoin a defendant from speaking the truth. *Canal Co.* v. *Clark,* 13 Wall. 311; *Lawrence Co.* v. *Tennessee Co.,* 138 U. S. 537; *Holmes, Booth & Hayden case,* 97 Connecticut, 278; *Leather Cloth Co.* v. *American L. C. Co.,* 11 Jur. N. s. 513; *Jennings* v. *Johnson,* 37 Fed. Rep. 365; *Tarrant & Co.* v. *Hoff,* 76 Fed. Rep. 959.

The law assumes that purchasers will use ordinary care. Cases *supra* and *Rogers* v. *Simpson,* 54 Connecticut, 568; *Faber* v. *Faber,* 49 Barb. 357; *Ball* v. *Siegel,* 116 Illinois, 137; *Monroe* v. *Tousey,* 129 N. Y. 138; *Knights of Pythias case,* 71 N. W. Rep. 470; *Singer Co.* v. *Wilson,* 2 Ch. Div. 477; *Popham* v. *Cole,* 66 N. Y. 69; *Fairbanks* v. *Bell Co.,* 77 Fed. Rep. 869; *Morse* v. *Worrel,* Price & Steuart Am. Tr. Cas. 8.

*Mr. Henry D. Donnelly* and *Mr. Edmund Wetmore,* with whom *Mr. William W. Dodge* and *Mr. Archibald Cox* were on the brief, for respondent:

Respondent is the exclusive owner of all trade-names and trade-marks of its predecessors, relating to the typewriter business, and has the legal right to designate its product by the trade-names and trade-marks adopted and used by E. Remington & Sons and by its other predecessors. *Richmond & Co.* v. *Richmond,* 159 U. S. 293; *Walter Baker & Co.* v. *Sanders,* 80 Fed. Rep. 889; *Raymond* v. *Royal Baking Powder Co.,* 85 Fed. Rep. 231; *Kidd* v. *Johnson,* 100 U. S. 618; *Le Page*

*Glue cases,* 51 Fed. Rep. 943; and 147 Massachusetts, 206; *Hoxie* v. *Chaney,* 143 Massachusetts, 592; *Brown Chemical Co.* v. *Meyer,* 139 U. S. 548; *Ainsworth* v. *Walmsley,* L. R. 1 Eq. 518; *Derringer* v. *Plate,* 29 California, 292; *Clark Thread Co.* v. *Armitage,* 74 Fed. Rep. 940; *Rahtjen Co.* v. *Holzappel Co.,* 101 Fed. Rep. 260; Kerly on Trade Marks, 2d ed., 463; *Rogers Co.* v. *Rogers Co.,* 11 Fed. Rep. 330, 495; *Shipwright* v. *Clements,* 19 W. Rep. 599; *Wilmer* v. *Thomas,* 74 Maryland, 485; *Born* v. *Moss,* 70 N. Y. 473; *Morgan* v. *Rogers,* 19 Fed. Rep. 596; Sebastian on Trade Marks, 4th ed., 299; *Hillson Co.* v. *Foster,* 80 Fed. Rep. 896.

For definition of good will to effect that it is the probability that customers will resort to the old place, see *Menendez* v. *Holt,* 128 U. S. 514, 522; *Cruttwell* v. *Lye,* 17 Ves. 335, 346; *Churton* v. *Douglas,* Johnson V. C. 174, 178; *Knœdler* v. *Boussod* 47 Fed. Rep. 465; *Washburn* v. *Wall Paper Co.,* 81 Fed. Rep. 17.

The name "Remington," which has for many years been generally and widely known to the trade as symbolizing complainant-appellee's product and business, is a very important and valuable part of the good will of its business. Sebastian, 4th ed., 17.

A corporation may acquire a property right to the use of a name other than its corporate name as incidental to the good will of its business. *Goodyear R. Co.* v. *Goodyear Rubber M. Co.,* 21 Fed. Rep. 277; *Thomas* v. *Dakin,* 22 Wend. 9; 1 Cook on Corp. § 15, p. 58; 1 Thompson on Corp. § 286; 7 Ency. Law, 2d ed., 685; 10 Cyc. Law, 151; *Higgins Soap case,* 144 N. Y. 462; *Tuerk Co.* v. *Tuerk,* 36 N. Y. Supp. 384; *S. Howes Co.* v. *Howes Co.,* 52 N. Y. Supp. 468.

The fact that petitioner had discontinued the sale of the machines after suit was commenced and before the entry of the decree, did not disentitle the appellee to the relief granted. *Oxford University* v. *Wilmore-Andrews Pub. Co.,* 101 Fed. Rep. 443; *Clark Thread Co.* v. *William Clark Co.,* 37 Atl. Rep. 599; *Burnett* v. *Hahn,* 88 Fed. Rep. 694.

As petitioner had full knowledge of respondents' use in its

business of the name, it is no defense that the name "Remington" or "Remington Company" or "Remington Typewriter Company" was assumed in good faith and without design to mislead the public and acquire appellee's trade. *Higgins Soap case,* 144 N. Y. 462, 471; *Roy Watch Case Co. v. Camm-Roy Watch Case Co.,* 58 N. Y. Supp. 979; *Fuller v. Huff,* 104 Fed. Rep. 141; *Johnston v. Orr-Ewing,* 7 App. Cas. 219.

This is not a case where the Illinois corporation is obliged to use complainant's name and is not, therefore, one of *damnum absque injuria.* It is the case of an *unnecessary use* of a name long previously employed by another in the same business, and in which the use thereof by the "second comer" constitutes an untrue and deceptive representation. *Fuller v. Huff,* 104 Fed. Rep. 141; *R. W. Rogers Co. v. Wm. Rogers Mfg. Co.,* 70 Fed. Rep. 1017; *Clark Thread Co. v. Armitage,* 74 Fed. Rep. 936, 944; *Meyer v. Bull Medicine Co.,* 58 Fed. Rep. 884; *Investor Pub. Co. v. Dovinson,* 72 Fed. Rep. 603; *Rogers v. Rogers & Spurr,* 11 Fed. Rep. 495; *Lamb Knit Goods Co. v. Lamb Glove & Mitten Co.,* 120 Michigan, 159; *Higgins Co. v. Higgins Soap Co.,* 144 N. Y. 462; *De Long v. De Long Hook & Eye Co.,* 32 N. Y. Supp. 203; *Penberthy Injector Co. v. Lee,* 120 Michigan, 174; *Holmes v. Holmes, B. & A. Mfg. Co.,* 37 Connecticut, 278; *Meriden B. Co. v. Parker,* 39 Connecticut, 450; *Williams v. Brook,* 50 Connecticut, 278; *Bissell v. Plow Co.,* 121 Fed. Rep. 357; *Peck Bros. & Co. v. Peck Bros. Co.,* 113 Fed. Rep. 291, 302; *Le Page Co. v. Russia Cement Co.,* 51 Fed. Rep. 941; *Chickering v. Chickering,* 120 Fed. Rep. 69; *International Silver Co. v. Rogers Co.,* 110 Fed. Rep. 955; *S. C.,* 113 Fed. Rep. 291; *S. C.,* 118 Fed. Rep. 133; *Garrett v. Garrett,* 78 Fed. Rep. 472; *Valentine Meat Juice Co. v. Valentine Extract Co., Ltd.,* 17 Pat. & Tr. Mk. Cas. 673, 684; *S. C.,* 83 L. T. N. S. 271.

Corporations which do not inherit their names, but assume them voluntarily, may not use their assumed names if such use shall result in the confusion and deception of the public and the displacement of the good will of another's business.

*Lee* v. *Haley,* L. R. 5 Ch. App. 160; *Massam* v. *Cattle Co.,* L. R. 14 Ch. Div. 748; *Celluloid Co.* v. *Cellonite Co.,* 32 Fed. Rep. 94; *Newby* v. *Ore. Cent. Ry. Co.,* 1 Deady, 609; *Stuart* v. *Stewart Co.,* 91 Fed. Rep. 243. The selection of this particular name shows fraud. Cases *supra* and *Taylor* v. *Taylor,* 25 L. J. Eq. N. S. 255; *Landreth* v. *Landreth,* 22 Fed. Rep. 41; *Butterick* v. *Standard Co.,* N. Y. Law J., March 21, 1896; *Gray* v. *Pulley Works,* 16 Fed. Rep. 436.

That another may have the right to use a particular name, as well as complainant-appellee is unimportant, if appellee's right be exclusive as against appellants. Cases *supra* and *Newman* v. *Alvord,* 51 N. Y. 189; *Croft* v. *Day,* 9 Beav. 88. *Shaver* v. *Heller & M. Co.,* 108 Fed. Rep. 821.

It is not material in this case whether the name "Remington" is or is not a lawful technical trade-mark, for the right of the appellee to the use of this name is so far exclusive as against the appellants that the court will treat the name as a descriptive term to the benefit of which appellee is entitled. Cases *supra* and *Koehler* v. *Sanders,* 122 N. Y. 65, 74; *Montgomery* v. *Thomson* (1891), App. Cas. 217; *Wotherspoon* v. *Currie,* 5 L. R. H. L. 508; *Reddaway* v. *Banham* (1896), App. Cas. 199.

The use by the Howe Scale Co. and the Remington-Sholes Company of the names "Remington," "Remington . . . Company," etc., was calculated to produce and cause confusion in the mind of the public and in the business of appellee, and the public and purchasers and users of writing machines were mislead, and caused to believe that the typewriters manufactured by the Remington-Sholes Company, and sold by defendant-appellant were of appellee's manufacture, and were "Remington machines," or a species thereof, or a new and improved "Remington," and that the Remington-Sholes Company's business and its machines had some connection with the complainant-appellee. Kerly on Trade Marks, 2d ed., 476; *Randall* v. *Shoe Co.,* 19 Rep. Pat. Law Br. 393; *Eastman Co.* v. *Cycle Corp.,* 15 R. P. Cas. 105, 112;

*Brewery Co.* v. *Brewery Co.*, 1 Ch. 536; *S. C.*, (1899) App. Cas. 83.

As to the right of a person who has popularized a name to be protected against its use, in connection with other words or names, see *Anheuser-Busch* .v. *Piza*, 24 Fed. Rep. 149; *Congress Spring Co.* v. *High Rock Co.*, 45 N. Y. 291; *Carlsbad* v. *Kutnow*, 71 Fed. Rep. 168; *Apollinaris Co.* v. *Norrish*, 33 L. T. N. S. 242; *Cochrane* v. *MacNish*, L. R. A. C. 231; *Fuller* v. *Huff*, 104 Fed. Rep. 141; *Saxlehner* v. *Eisner &c. Co.*, 179 U. S. 19, 33; *Hier* v. *Abrahams*, 82 N. Y. 519. Especially where it is unnecessary. *Taendsticksfabriks &c.* v. *Myers*, 139 N. Y. 364; *Manufacturing Co.* v. *Trainer*, 101 U. S. 61; *Biscuit Co.* v. *Baker*, 95 Fed. Rep. 135; *Orr* v. *Johnston*, 13 Ch. Div. 434; *Collensplatt* v. *Finlayson*, 88 Fed. Rep. 693.

The decision in the German courts will not avail appellants here. Wharton's Conflict of Law, §§ 793, 827; *Hohner* v. *Gratz*, 50 Fed. Rep. 369; *Carlsbad* v. *Kutnow*, 68 Fed. Rep. 794; *S. C.*, 71 Fed. Rep. 167. The cases cited by appellants can be distinguished.

Among other cases which emphasize the fact that where the symbol which embodies a good will consists of a name the appearance or "get-up" of the article is of practically no value in preventing the evil which the law aims to correct, see those involving trade-names as follows: "Queen" and "Queen Quality," 105 Fed. Rep. 377; "Congress" and "High Rock Congress," 54 N. Y. 291; "Carlsbad" and "Kutnow's Improved Effervescing Carlsbad," 71 Fed. Rep. 168; "Home" and "Home Delight," 59 Fed. Rep. 284; "Apollinaris" and "London Apollinaris," 33 L. T. R. 242; "Glenfield" and "Royal Palace Glenfield," 5 H. L. 508; "Budweiser" and "Milwaukee Budweiser," 87 Fed. Rep. 864; "Sunlight" and "American Sunlight," 88 Fed. Rep. 485; "Royal" and "Royal London," 76 Fed. Rep. 465; "Health Food" and "Sanitarium Health Food," 104 Fed. Rep. 141; "Comfort" and "Home Comfort," 127 Fed. Rep. 962; "Sanitas" and "Condi-Sanitas," 56 L. T. N. S. 621; "Portland" and "Famous Portland," 52

N. J. Eq. 380; "Roy Watch Case Co." and "Camm-Roy Watch Case Co.," 59 N. Y. Supp. 979; "Star" and "Lone Star," 51 Fed. Rep. 832; "Cashmere" and "Violets of Cashmere," 88 Fed. Rep. 899; "Hohner" and "Improved Hohner," 52 Fed. Rep. 871; "Pride" and "Pride of Syracuse," 82 N. Y. 519; "German Household Dyes" and "Excellent German Household Dyes," 94 Wisconsin, 583; "Guinea Coal Co." and "Pall Mall Guinea Coal Co." 5 Ch. 155; "Le Page's Liquid Glue" and "Le Page's Improved Liquid Glue." 147 Massachusetts, 206; "The American Grocer" and "The Grocer," 25 Hun (N. Y.), 398.

The reasoning which takes account of facts as they exist and which corrects instead of encourages fraud is endorsed and applied in the majority of cases. Cases *supra* and *Von Munn* v. *Frash*, 56 Fed. Rep. 830; *Hostetter* v. *Sommers*, 84 Fed. Rep. 303; *Little* v. *Kellam*, 100 Fed. Rep. 353; *Hostetter* v. *Becker*, 73 Fed. Rep. 297. And see *Awl Co.* v. *Marlborough Co.*, 168 Massachusetts, 154; *Powell* v. *Vinegar Co.*, L. R. 1896, Ch. D 88.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

Referring to the Remington-Sholes Company, it was unanimously held by the Circuit Court of Appeals: "We do not find in this voluminous record sufficient evidence that defendant has itself done anything to promote confusion in the minds of the public, except to use the name 'Remington' on its machines and in its literature."

Accepting that conclusion, it follows that complainant's case must stand or fall on the possession of the exclusive right to the use of the name "Remington."

But it is well settled that a personal name cannot be exclusively appropriated by any one as against others having a right to use it; and as the name "Remington" is an ordinary family surname, it was manifestly incapable of exclusive appropriation as a valid trade-mark, and its registration as such

could not in itself give it validity. *Brown Chemical Company* v. *Meyer,* 139 U. S. 540; *Singer Manufacturing Company* v. *June Manufacturing Company,* 163 U. S. 169; *Elgin National Watch Company* v. *Illinois Watch Case Company,* 179 U. S. 665.

The general rule and the restrictions upon it are thus stated in *Brown Chemical Company* v. *Meyer.* There plaintiff had adopted as a trade-mark for its medicine the words "Brown's Iron Bitters," and the defendants used upon their medicine the words "Brown's Iron Tonic." This court, after commenting upon the descriptive character of the words "Iron Tonic," and confirming the defendants' right to the use of these, said:

"It is hardly necessary to say that an ordinary surname cannot be appropriated as a trade-mark by any one person as against others of the same name, who are using it for a legitimate purpose; although cases are not wanting of injunctions to restrain the use even of one's own name where a fraud upon another is manifestly intended, or where he has assigned or parted with his right to use it."

And, after citing numerous authorities, Mr. Justice Brown, delivering the opinion, continued:

"These cases obviously apply only where the defendant adds to his own name imitation of the plaintiff's labels, boxes or packages, and thereby induces the public to believe that his goods are those of the plaintiff. A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property. If such use be a reasonable, honest and fair exercise of such right, he is no more liable for the incidental damage he may do a rival in trade than he would be for an injury to his neighbor's property by the smoke issuing from his chimney, or for the fall of his neighbor's house by reason of necessary excavations upon his own lands. These and similar instances are cases of *damnum absque injuria.*"

In *Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S. 169, the rule is thus laid down by Mr. Justice White:

"Although 'every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and injure the business of another having the same name, in such case the inconvenience or loss to which those having a common right are subjected is *damnum absque injuria.* But although he may thus use his name he cannot resort to any artifice, or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name.'"

In the present case, the decree enjoined the use, "in any manner whatsoever," "of the designation 'Remington' as the name, or part of the name, of any typewriting machine whatsoever manufactured by the Remington-Sholes Company; or by defendant or any person or concern, and from selling, offering, exposing or advertising for sale by means of signs, show cards, catalogues, circulars, publications, advertisements or by word of mouth, or in any manner whatsoever, typewriting machines manufactured by said Remington-Sholes Company or by defendant, or any person or concern under the name of or as 'Remington-Sholes,' or by any designation of which the word Remington shall constitute a part." This denies the right to use the personal name, rather than aims to correct an abuse of that right, and involves the assertion of the proposition that the use of a family name by a corporation stands on a different footing from its use by individuals or firms. But if every man has the right to use his name reasonably and honestly, in every way, we cannot perceive any practical distinction between the use of the name in a firm and its use in a corporation. It is dishonesty in the use that is condemned, whether in a partnership or corporate name, and not the use itself.

*Goodyear's India Rubber Glove Manufacturing Company v. Goodyear Rubber Company,* 128 U. S. 598, was a suit by a corporation of New York against a corporation of Connecticut,

to restrain the use in business of the name "Goodyear's Rubber Manufacturing Company," or any equivalent name. It was held that "Goodyear Rubber" described well known classes of goods produced by the process known as Goodyear's invention; and that such descriptive names could not be exclusively appropriated. And Mr. Justice Field, delivering the opinion, said: "Names of such articles cannot be adopted as trademarks, and be thereby appropriated to the exclusive right of any one; nor will the incorporation of a company in the name of an article of commerce, without other specification, create any exclusive right to the use of the name."

The principle that one corporation is not entitled to restrain another from using in its corporate title a name to which others have a common right, is sustained by the discussion in *Columbia Mill Company* v. *Alcorn*, 150 U. S. 460, and is, we think, necessarily applicable to all names *publici juris*. *American Cereal Company* v. *Eli Pettijohn Cereal Company*, 72 Fed. Rep. 903; *S. C.*, 76 Fed. Rep. 372; *Hazelton Boiler Company* v. *Hazelton Tripod Boiler Company*, 142 Illinois, 494; *Monarch* v. *Rosenfeld*, 39 S. W. Rep. 236.

It is said that the use of the word "Remington" in the name "Remington-Sholes" was unnecessary, as if necessity were the absolute test of the right to use. But a person is not obliged to abandon the use of his name or to unreasonably restrict it. The question is whether his use is reasonable and honest, or is calculated to deceive.

"It is a question of evidence in each case whether there is false representation or not." *Burgess* v. *Burgess*, 3 De G. M. & G. 896.

The Circuit Court of Appeals in the present case quotes with approval from the concurring opinion of Wallace, J., in *R. W. Rogers Company* v. *William Rogers Mfg. Co.*, 70 Fed. Rep. 1017, that "a body of associates who organize a corporation for manufacturing and selling a particular product are not lawfully entitled to employ as their corporate name in that business the name of one of their number when it appears that such

name has been intentionally selected in order to compete with an established concern of the same name, engaged in similar business, and divert the latter's trade to themselves by confusing the identity of the products of both, and leading purchasers to buy those of one for those of the other. . . . The corporators chose the name unnecessarily, and, having done so for the purpose of unfair competition, cannot be permitted to use it to the injury of the complainant."

This, of course, assumes not only that the name selected was calculated to deceive, but that the selection was made for that purpose.

In *Turton and Sons* v. *Turton and Sons*, 42 Ch. Div. 128, plaintiffs had carried on the iron business as "Thomas Turton and Sons." Defendant began the same business as John Turton, then traded as John Turton and Co., and finally took in his sons and changed the firm name to "John Turton and Sons." Some confusion had arisen, and plaintiffs contended that there was no necessity for defendants to use their own names.

Lord Esher said: "Therefore the proposition goes to this length; that if a man is in business and has so carried on his business that his name has become a value in the market, another man must not use his own name. If that other man comes and carries on business he must discard his own name and take a false name. The proposition seems to me so monstrous that the statement of it carries its own refutation."

And Lord Macnaghten said in *Reddaway* v. *Banham*, L. R. Appeal Cases, 1896, 199, 220: "I am quite at a loss to know why *Turton* v. *Turton* was ever reported. The plaintiff's case there was extravagant and absurd." And see *Meneely* v. *Meneely*, 62 N. Y. 427; *Meriden Co.* v. *Parker*, 39 Connecticut, 450.

In our opinion the Remingtons and Sholes made a reasonable and fair use of their names in adopting the name "Remington-Sholes" for their machine, and in giving that name to the corporation formed for its manufacture and sale.

The formation of a corporation as an effective form of busi-

ness enterprise was not only reasonable in itself, but the usual means in the obtaining of needed capital. And as Wallace, J., said: "It was natural that those who had invented the machine, and given all their time and means in introducing it to the public, when they came to organize the corporation which was to represent the culmination of their hopes and efforts, should choose their own name as the corporate name. In doing so I think they were exercising only the common privilege that every man has to use his own name in his own business, provided it is not chosen as a cover for unfair competition. They did not choose the complainant's name literally, or so closely that those using ordinary discrimination would confuse the identity of the two names, and that differentiation is sufficient to relieve them of any imputation of fraud."

The name "Remington-Sholes Company" is not identical with, or an imitation of, "Remington Standard Typewriter Company," or "Remington Typewriter Company," or "E. Remington and Sons." Defendant's marks "Rem-Sho," "Remington-Sholes Co., Mfrs., Chicago," are not identical with, or an imitation of, complainant's marks "Remington;" Large Red Seal; "Remington Standard Typewriter, manufactured by Wyckoff, Seamans and Benedict, Ilion, N. Y., U. S. A."; "Remington Standard Typewriter."

The use of two distinct surnames clearly differentiated the machines of defendant from those of complainant, and when defendant's cards, signs, catalogues, instructions to agents, etc., are considered, it seems to us that the record discloses, to use the language of Mr. Justice Field in the *Goodyear case,* a persistent effort on defendant's part "to call the attention of the public to its own manufactured goods, and the places where they are to be had, and that it has no connection with the plaintiff." Doubtless the Remingtons and Sholes, in using the name "Remington-Sholes," desired to avail themselves of the general family reputation attached to the two names, but that does not in itself justify the assumption that their purpose was to confuse their machines with complainant's; or that the

use of that name was in itself calculated to deceive. Remington and Sholes were interested in the old company, and Remington continued as general manager of the new company. Neither of them was paid for the use of his name, and neither of them had parted with the right to that use. Having the right to that use, courts will not interfere where the only confusion, if any, results from a similarity of the names and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails.

As observed by Mr. Justice Strong in the leading case of *Canal Company* v. *Clark*, 13 Wall. 311: "Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth." And by Mr. Justice Clifford, in *McLean* v. *Fleming*, 96 U. S. 245: "A court of equity will not interfere when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other." And by Mr. Justice Jackson in *Columbia Mills Company* v. *Alcorn*, 150 U. S. 460: "Even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer." And see *Coats* v. *Merrick Thread Company*, 149 U. S. 562; *Liggett & Myers Tobacco Company* v. *Finzer*, 128 U. S. 182.

We hold that, in the absence of contract, fraud or estoppel, any man may use his own name, in all legitimate ways, and as the whole or a part of a corporate name. And, in our view, defendant's name and trade-mark were not intended or likely to deceive, and there was nothing of substance shown in defendant's conduct in their use constituting unfair competition, or calling for the imposition of restrictions lest actionable injury might result, as may confessedly be done in a proper case.

*Decree of Circuit Court of Appeals reversed; decree of Circuit Court also reversed, and cause remanded to that court with a direction to dismiss the bill.*