### SMITH *v.* LIBRARY TEA CO.

TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—INJUNC-
TION.

> Where the defendant, in a suit to restrain unlawful com-
> petition, sold oleomargarine under the name of "yellow
> special," a name that complainant had adopted and used
> for two years, but the evidence did not show that the
> defendant ever tried to represent its goods as those of
> the complainant, or that the public were deceived, and
> the name was one commonly used in the trade, a decree
> enjoining the use of the name, as constituting unfair or
> unlawful competition, was not justified.

Appeal from Wayne; Hally, J. Submitted June 12,
1913. (Docket No. 83.) Decided December 20, 1913.

Bill by J. Henry Smith against the Library Tea
Company for an injunction. From a decree for com-
plainant, defendant appeals. Reversed.

*Williams C. Harris (L. J. Whittemore,* of counsel),
for complainant.

*Rowland M. Connor,* for defendant.

McALVAY, J. Complainant, who has been engaged
in the wholesale and retail grocery business in the
city of Detroit for many years, and, among other
things, selling and keeping for sale oleomargarine, or
butterine, filed his bill of complaint in the circuit
court for the county of Wayne, in chancery, against
defendant, Library Tea Company, a corporation, en-
gaged, among other things, in the business of selling
oleomargarine. Complainant alleges that in April,
1909, to designate a certain brand of butterine he
adopted the trade-name "yellow special," and exten-
sively advertised continuously in the newspapers, and

also in and about his store placed placards, upon which were printed the words "yellow special butterine," and that the same were printed on boxes in which the manufacturer shipped the goods to him; that this particular brand of butterine was made for him under contract by Armour & Co. and was of prime quality. He alleges that sales increased from a small amount to 200,000 pounds annually in the year 1911. He alleges that the public dealing with him called for this "yellow special" brand; that on January 23, 1911, under the laws of this State he filed with the secretary of State "yellow special" as his trademark to be applied to butterine. Complainant alleges that in December, 1910, he learned that defendant, which did business within a block or two of his place and on the same street, was advertising oleomargarine under the name "yellow special" in the same newspapers, and near complainant's advertisements, and selling a spurious and inferior article under that name, fraudulently palming the same off as and for the product of complainant. He at once notified defendant to refrain from using the name "yellow special," which it refused to do, and complainant forthwith filed his bill of complaint in this cause, January 31, 1911, against defendant to restrain it from using the name "yellow special" in advertising its oleomargarine, claiming it as a trade-name, and secured a temporary injunction for that purpose. Defendant answered the bill of complaint, denying each and every allegation therein, paragraph by paragraph, and denying all right or equity in the complainant for any relief prayed therein, alleging that for years the term "yellow special" had been used in connection with this article of commerce, and was well known; that it had been used by dealers for years, particularly in the city of Detroit, and also alleged that complainant fraudulently claimed a trade-mark in the name "yellow special," whereby defendant was

damaged and asked for affirmative relief that complainant be enjoined from using such name as a trademark. Upon issue joined the cause was heard upon proofs taken in open court, which resulted in a decree in favor of complainant, and a permanent injunction against defendant in accordance with the prayer of the bill of complaint. An appeal has been taken to this court on the part of defendant, asking that such decree be reversed and set aside.

Upon the hearing of the case complainant abandoned any and all claim by reason of a trade-mark, as appears by his statement in the record, and as also appears in the opinion of the court, as follows:

"Counsel for complainant rests his case, not on the trade-mark law, but on the ground of unfair trade."

It follows that the issue is narrowed to the one question as to whether, under the facts shown by this record, defendant in the use of the name "yellow special" in advertising oleomargarine for sale was guilty of unfair trade. The record shows that the bill was planted upon the theory that complainant was the owner of the words "yellow special" as his lawful trade-mark and his exclusive property, which without lawful right defendant was using to his injury. During the trial he admitted that he had no lawful trademark, but insisted that this was a trade-name which he had appropriated and used for the term of about two years, having spent a large amount of money in advertising such trade-name, and that defendant's use of the words "yellow special" was unfair trade and to his damage. The record shows that he had used these words for a term of two years, during 1909 and 1910. It appears from the proofs that the president and general manager of defendant company in 1903 and 1904 had sold "yellow special" butterine; that other dealers in Detroit had advertised and sold

such goods under the same name in 1906; that one dealer in Detroit had advertised and sold "yellow special" oleomargarine for 12 years. The court, in his opinion, found as follows:

"There is no showing that defendant ever tried to palm off his oleomargarine as the same product sold by complainant, or that the public in asking for defendant's product thought that it was procuring the same goods offered by complainant, or that defendant's clerks attempted to deceive the public."

Further:

"In the case under consideration the defendant made it appear not long before complainant used this name others had used it. This, with the short period of time complainant has used it, seems to take the case out of the decisions to which I have been referred."

These findings by the court are supported by the uncontradicted evidence, and dispose of complainant's contention that by long term of years he had become entitled to the use of "yellow special" as a tradename. The court, in his opinion, held:

"There is, however, a property value in advertising. Complainant, with the use of this term, was in the field before the defendant. He had spent money and given time and thought to make it valuable"— and upon that ground granted complainant relief.

The Supreme Court of the United States in a leading case, in an opinion written by Mr. Chief Justice Fuller, has said:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails." *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118 (25 Sup. Ct. 609).

The record in the instant case shows that defendant did not sell defendant's goods as those of com-

plainant, and did not conduct its business so as to represent its goods as those of complainant. It also shows that complainant by the use of the well-known, familiar and commonly used words "yellow special," as applied to this class of goods, had acquired no right to claim that the use by defendant, as proved, constituted unfair competition.

The decree of the circuit court is reversed, and the decree will be entered in this court dismissing his bill of complaint, with costs of both courts in favor of defendant.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.