# CURRENT OHIO COURT of APPEALS CASES
## Weekly Advance Abstract Opinions

## EPITOMIZED OPINIONS
### Published only in the Abstract

No. 24
### TOLEDO SEED & OIL v. CLEMENT
Ohio Appeals, 6th Dist., Lucas Co.
No. 1605.   Decided Nov. 30, 1925

452.  EMPLOYER AND EMPLOYEE—The amendment to Art. 2, Sec. 35 effective Jan. 1, 1924, which provides that if any employer pays the premium or compensation he shall not be liable at common law or by statute for death, injuries, etc., of employee, applys only to empoyers and employes and does not undertake to fix or limit liability of other than these two classes.

RICHARDS, J.

John Clement was injured while engaged in making certain repairs of electrical apparatus in the establishment of the Toledo Seed & Oil Co.  He recovered a verdict and judgment in the Lucas Common Pleas for $3500 against the Seed Co. and error was prosecuted to reverse this judgment.

The controversy in this case arises as to whetheror not Clement was an employee of the Seed Co. at the time of his injury, or of one De Lisle, who had a contract with the Company to do certain electrical wiring, Clement assisting in said work as an electrical helper. The Court of Appeals held:

1.  The question whether Clement was an employee of the Seed Co. or of De Lisle as an independent contractor was fairly left to the jury, which, by its verdict, clearly determined that he was an employee of De Lisle; and that finding is sustained by sufficient evidence.

2.  The Seed Co. employed more than three workmen and had complied with the compensation law, while De Lisle had failed to do so.

3.  Section 1465-61 GC. par. 3 applys, and provides that persons in employ of an independent contractor who has failed to pay his premium into the State Insurance Fund, shall be considered as the employee of the person who has entered into a contract with such independent contractor, unless such employer elects, after injury, to regard the independent contractor as the employer.

4.  The Seed Co. therefore remained in the relation of a third party to the transaction in so far as Clement is concerned and would be liable to answer in damages for the proximate results of its negligent acts unless relieved therefrom by Art. 2, Section 35 of the constitution of Ohio, the amendment to this section becoming effective Jan. 1, 1924, 23 days before the injury to Clement.

5.  This section provides that "any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death etc."

6.  This language does not relieve the Seed Co. from any liability which may attach by virtue of 1465-61 GC., the amendment to the constitution had relation only to employers and employees and did not undertake to fix or limit the liability of other than these two classes.

7.  It being determined that Clement was the employe of De Lisle, the Seed Co. remained liable for its negligent acts resulting directly in injury to Clement.

Judgment affirmed.

Attorneys—Lawton & Saalfield, and L. J. O'Rourke for Seed Co.; C. A. Thatcher and O. A. Meck for Clement; all of Toledo.

No. 25
### FEERER, Inc. v. KLIVANS et
Ohio Appeals, 9th Dist., Summit Co.
No. 1091.   Decided Nov. 6, 1925

1206.  UNFAIR   COMPETITION—Where two parties have same right to use a trade name in different lines of business and one party innovates a department with the same stock as the other party under same trade name, former is not guilty of unfair competition.

350.  DAMNUM ABSQUE INJURIA—The loss, if any, resulting to merchant by advent of a similar stock of goods into other merchant's stock, from confusion of purchasing public by continued and honest use of such trade name is damnum absque injuria.

WASHBURN, J.

Two corporations, the Kay Clothing Co. and the Kay Jewelry Co. carried on business in Akron practically opposite each other.  The word "Kay" had no relation to the names of any parties but was merely a trade name. Both stores, however, were owned by the same parties.

In 1921 both companies became financially

embarrassed and filed petitions in bankruptcy. The jewelry store was sold to Martin Feerer and the clothing store to Bert Klivans by the trustee in bankruptcy. In neither of the sales did the trustee undertake to sell the name or good will of the bankrupt.

Both Feerer and Klivans permitted to remain in front of their stores the same electric signs which formerly advertised the business conducted therein; and in both of these signs the word "Kay" was prominent. Each spent large sums of money for the advertising of his business and in this advertising the word "Kay" was prominently displayed.

Before this action was commenced, Klivans concluded to install in his clothing store a jewelry department. Feerer learning of this fact and before Klivans began to sell jewelry, brought his action in the Summit Common Pleas. After decision therein, Klivans proceeded to sell jewelry in his jewelry department. Klivans also advertised that he was in no way connected with any other firm of the same name; and testified that he proposed to distinguish his business from that of Feerer as much as possible; and disclaimed any intention to use the word "jewelry" in his trade name.

The case was appealed and Feerer claimed that Klivans could not legally apply the name "Kay" to articles of jewelry to be sold by him. That is that he may sell jewelry but may not sell it as "Kay" jewelry; and so far as territory in which the parties sell, Feerer claimed he had acquired a property right in the trade name "Kay" as applied to jewelry and that this property right belongs to him. The Court of Appeals held:

1. The word "Kay" is not descriptive of articles sold and is simply a trade name under which the parties conduct their respective business; one has as good a right to use the trade name as the other, and as against each other, neither had any property right in same.

2. The parties, in this respect, are in much the same position as they would be if each was named Kay and each had the right accorded him under law to use his own name in connection with his own business.

3. The use of a person's name in his business must honestly be made and not for the purpose of deceiving; and in such a way as to unnecessarily deceive the purchasing public and gain business which but for such unfair practice would go to another.

4. The jewelry sold does not establish that the name "Kay" has any significance or meaning as to the origin of the jewelry sold by Feerer so as to distinguish his jewelry from any other; and Feerer, having chosen to deal with the public under a fictitious name under

which Klivans also had a right to deal, cannot compel Klivans to forego his right to the use of such name although purchasers of jewelry may be confused as to with whom they are dealing.

5. If Klivan's selling of jewelry under the name of "Kay" confuses the public, which interferes and injures the business of Feerer, Klivan's absolute right to use said name honestly in his own business, renders such inconvience or loss damnum absque injuria.

6. Klivans has not been guilty of any intentional deception and so long as he conducts his business in accordance with his declared intention, he will be doing that which he has a right to do and Feerer's rights will not be violated thereby.

7. Finding nothing calling for imposition of restrictions to prevent actionable injury which it is feared might result, Feerer's petition is dismissed.

Decree accordingly.

Attorneys—Slabaugh, Young, Seiberling, Huber & Guinther, and H. B. Harris, for Feerer; Rockwell & Grant and Ben W. Holub for Klivans; all of Akron.

---

No. 26

MUDGE et v. POPE, Admx.

Ohio Appeals, 8th Dist., Cuyahoga Co.

No. 5744. Decided June 26, 1925

Judges Mauck, Sayre and Middleton, 4th Dist., sitting.

557. FRAUD—Where it does not constitute an indictable offense, evidence to support it need not be clear and convincing; but merely preponderating.

MIDDLETON, J.

It seems that Wm. Pope, now deceased, recovered a judgment of $25,000 against A. A. Mudge in the Cuyahoga Common Pleas, for personal injuries sustained by him due to the negligent operation by Mudge of his automobile. Also that the Maryland Casualty Company had issued a policy of insurance to Mudge whereby it insured him in the sum of $10,000 against liability for personal injuries caused through the operation of his machine. The Casualty Company, which is a co-defendant of Mudge's was given control of any litigation arising out of any injury caused by the automobile.

It was alleged in that case that Mudge and the Company conspired to cause Pope to believe that nothing would be realized on the verdict; that Pope's attorneys were not properly representing him; and that Mudge as his friend would see that he (Pope) was compen-