THE INTERNATIONAL SILVER COMPANY

*v.*

WILLIAM H. ROGERS.

[Decided July 3d, 1906.]

1. The fact that one has been a wrong-doer in the use of his name as a trade name does not warrant equity in restraining him from subsequently using in good faith his name as a trade name in the same business.

2. No one has the right to represent his goods as the goods of someone else, and equity will restrain a man from so using his name on or in connection with his own goods as to suggest, except as the mere name itself may suggest, that his goods are the goods of a competitor, and pass them off as such.

3. The gist of an action to enjoin one from using a trade name is not an impairment of complainant's profits by defendant's competition, but the fraudulent representation that defendant's goods are complainant's, and the fact that a complainant is or may be injured by the use of the name is not material.

4. A manufacturer, using his own name as a trade name, is not required to so use his name as to inform the public that his goods are not the goods of a prior manufacturer using the same name, for the prior manufacturer must know that he has no exclusive right in the name as against others of the same name.

5. An actual manufacturer of silver-plated ware carried on the business under the name he had always been known by, "W. H. Rogers." He stamped his silverware with the words "W. H. Rogers, of Plainfield, N. J. Not connected with any other Rogers." He advertised himself as "W. H. Rogers, manufacturer of very best silver-plated ware, of Plainfield, N. J."—*Held*, that equity would not prevent the use of the name "W. H. Rogers" as a trade name on the suit of a prior manufacturer of similar goods using the word "Rogers" as a trade name.

6. A bill to restrain one from using his name as a trade name alleged that the term "Rogers goods" had acquired a secondary meaning as meaning the goods of complainant. The evidence did not show that defendant called his goods "Rogers goods," and he announced that his ware was made by "W. H. Rogers, of Plainfield, N. J."—*Held*, not to authorize equity in restraining defendant from using his name as a trade name.

On supplemental bill, answer and proofs.

*Mr. Edward A. Day,* *Mr. Hiram R. Mills* and *Mr. John P. Bartlett,* for the complainant.

*Mr. Craig A. Marsh,* for the defendant.

STEVENS, V. C.

This is a supplemental bill filed against the defendant, praying that he be enjoined from stamping silver-plated spoons, forks or knives, or other silver-plated tableware, with the mark "W. H. Rogers," "Wm. H. Rogers" or "William H. Rogers," or any mark of which the word "Rogers" is a characteristic part, or from using those words, or any words of which the word "Rogers" is a prominent part, in a way calculated to indicate that such goods are the original Rogers silver-plated ware.

The original bill was filed against the Wm. H. Rogers corporation, its officers and directors. A decree was made enjoining it from making, marking or selling silver-plated tableware under the corporate name, Wm. H. Rogers, or under any name or mark of which the word "Rogers" was a part. *66 N. J. Eq. (21 Dick.) 119; 67 N. J. Eq. (1 Robb.) 646.*

After decree the corporation changed its name to the Plainfield Silver Plate Company, but soon ceased to do business, and was dissolved. After the dissolution the present defendant, William H. Rogers, purchased its plant and the lease of the factory and office in which it conducted its business, but did not purchase its good will. Since then he has conducted the business in his own name, and has stamped on all the goods he manufactures "W. H. Rogers of Plainfield, N. J." The evidence shows that he is now a manufacturer; that he personally supervises and conducts all the operations of silver-plating; that his ware is of excellent quality, and that it is made by a patented process, of which he claims to have the exclusive control, and which he says is superior to any process used by complainant. Whatever may have been his shortcomings in time past, I have no doubt that he is *now* a *bona fide* manufacturer of all the goods put out under his name. The name which he stamps upon his goods is the name by which he was known before he at-

36

tempted to engage in the silver-plating business, and he uses it in the form in which he was theretofore accustomed to use it. He no longer abbreviates it in a way that appeared to me to indicate an intention to appropriate to himself the reputation and name of another.

The question is whether and how far he is entitled to use his own name in a business which is, in every sense, his own.

The complainant's contention is twofold—*first,* that because the defendant was a fraud-doer in the past, he should be prevented from using his own name in this particular business; *second,* that if he has the same right to use his name that any other *bona fide* manufacturer bearing that name would have, he must use it only in connection with words that shall "unmistakably disconnect" him from the original Rogers.

I shall not devote any time to the first contention, because it has no authority to support it. It is not the function of a court of equity to punish past misconduct. That is the function of a criminal court. What equity does is to enjoin present and future invasion of the right of complainant, so far as he possesses any right. If proof of what is so obvious were needed, it would be found in the form of every decree that has been made in this class of cases. Of course, if a defendant's present conduct and intent be ambiguous, his past action may throw light upon them. In this way, and in this way only, do I apprehend that past misconduct can be in any way relevant.

The only question, then, is, How far, if at all, does the law prohibit a man from using his own name, in his own business, where that name happens to be the name of a competitor previously engaged in that business?

In the former proceeding I stated the general principle governing cases of unfair trade in terms which met with the approval of the court of errors and appeals. That principle, shortly stated, is that nobody has the right to represent his goods as the goods of somebody else. *66 N. J. Eq.* (*21 Dick.*) *125.* As applied to the particular case of a proper name it is that the court will restrain a man from so using his name on or in connection with his own goods (if that name has come to be recognized as characterizing a rival trader's goods) as to

suggest, except as the mere name itself may suggest it, that his goods are his rival's, and to pass them off as such. The cases hold that complainant must prove affirmatively that defendant is so using his name as to do this.

Now, in the first place, the mere fact that the competitor is, or may be, injured by the use of the name is not material. "The law," says Justice Brown (*Brown Chemical Co.* v. *Meyer, 139 U. S. 544*), speaking with reference to this class of cases, "does not visit with its reprobation a fair competition in trade. Its tendency is rather to discourage monopolies, except where protected by statute, and to build up new enterprises from which the public is likely to derive a benefit. If one person can, by superior energy, by more extensive advertising, by selling a better or more attractive article, outbid another in popular favor, he has a perfect right to do so. Nor is this right impaired by an open declaration of his intention to compete with others in the market." The gist of the action, therefore, is not impairment of complainant's profits by defendant's competition, but the false or fraudulent representation that defendant's goods are complainant's.

The leading case is *Croft* v. *Day, 7 Beav. 84*. Here the successor to Day & Martin, originators of a famous blacking, filed a bill to enjoin the defendant, a nephew of the elder Day (his name, too, being Day), from using a label of the same color and size as complainant's, with the letters arranged in the same way and with the same name, "Day & Martin," on the boxes. The defendant was enjoined, not upon the notion of any peculiar or exclusive right that complainant had to use the name "Day & Martin," but upon the fact of its use in a manner calculated to mislead the public. Said Lord Langdale: "He (defendant) has a right to carry on the business of a blacking manufacturer honestly and fairly. He has a right to the use of his own name. I will not do anything to deprive him of that or any other name calculated to benefit himself in an honest way. But I must prevent him from using it in such a way as to deceive and defraud the public."

*Holloway* v. *Holloway, 13 Beav. 209,* is another case. There Thomas Holloway had for many years made and sold pills and

ointment, with the label "Holloway's Pills and Ointment." His brother, Henry, subsequently manufactured pills and ointment under the same designation. The pill boxes and pots of the latter were similar in form to, and were proven to have been copied from, those of the former. The master of the rolls said: "The defendant's name being Holloway, he has a right to constitute himself a vendor of Holloway's pills and ointment, and I do not intend to say anything tending to abridge any such right, but he has no right to do so *with such additions to his own name* as to deceive the public and make them believe that he is selling the plaintiff's pills and ointment."

The facts of these cases showed a fraudulent design to take away a rival's trade by simulating his boxes and labels. The mere collocation of the words employed may point to a similar design. Thus, in the late case of *Valentine Meat Juice Co.* v. *Valentine Extract Co., 17 Rep. Pat. Cas. 673,* the complainant company had put upon the market an extract of meat which had acquired favor with the public, and had been sold in large quantities. A rival by the name of Valentine organized a corporation and began to sell a preparation which he called "Valentine's Meat Extract," although in fact he made no extract himself, and did nothing more than put up the extract of another in pellets of his own devising. He was enjoined from so using his name.

The case involving the name "Baker's Chocolate" was somewhat similar. *W. Baker & Co.* v. *Saunders, 80 Fed. Rep. 889.* Chocolate, under that name, had been manufactured for many years by Walter Baker & Company, and this particular collocation of words had come to denote, for the public generally, the source of manufacture. It was held that the defendant, W. H. Baker, could not call his chocolate "Baker's," or "W. H. Baker's Chocolate," but might state on the package that it was chocolate made by W. H. Baker.

On the same principle, the defendant in *Wotherspoon* v. *Currie, L. R. 5 H. L. 508,* was prohibited from calling his starch "Glenfield Starch," though made in Glenfield, and the defendant in *Montgomery* v. *Thompson, L. R. App. Cas. (1891) 217,* was prohibited from calling his ale "Stone Ale," though made at Stone. "It was," to quote from my former opinion, "distinctly

said in one of the judgments that the defendant was entitled to brew ale at Stone, and to indicate ·that it was manufactured there, but there were various means of stating that fact without using the particular collocation of words that had, by long usage, become the designation of the plaintiff's ale." The cases so far cited illustrate how a competitor may *not* use his name. The following show how he may:

*Burgess* v. *Burgess, 3 De G., M. & G. 896,* is a leading authority. John Burgess had for many years sold exclusively "Burgess's Essence of Anchovies." A grandson, who had been employed in the business, went off by himself and started a similar business on his own account, and advertised and made a sauce which he also called "Burgess' Essence of Anchovies." The lords-justices, on appeal, refused to enjoin him from doing this, although he had been enjoined by the vice-chancellor from doing certain other things, such as continuing on the sides of his shop door a plate with the words "Burgess' Fish Ware House, late of 107 Strand," where the grandfather had manufactured it. The judgment of Lord-Justice Turner has been repeatedly quoted as an accurate exposition of the law. He said: "No man can have any right to represent his goods as the goods of another person, but in applications of this kind it must be made out that the defendant is selling his own goods as the goods of another. Where a person is selling goods under a particular name, and another person not having that name is using it, it may be presumed that he so uses it to represent the goods sold by himself as the goods of the person whose name he uses. But when the defendant sells goods under his own name, and it happens that the plaintiff has the same name, it does not follow that the defendant is selling his ·goods as the goods of the plaintiff. It is a question of evidence, in each case, whether there is a *false* representation or not."

· *Turton* v. *Turton, 42 Ch. Div. 128,* is another case. The plaintiffs had for many years carried on the business of steel. manufacturers under the name of Thomas Turton & Sons. The defendant, John Turton, had for many years carried on a similar business in the same town, at first as John Turton, and then as Turton & Company. In 1888 he took his two sons into part-

nership and carried on the same business as John Turton & Sons. There was no evidence that defendants imitated the trade mark or labels of plaintiff, or otherwise attempted to deceive the public. Lord Esher, in the course of his judgment, quoting from what Lord-Justice Turner had said in the passage I have just quoted, continued: "He [Lord-Justice Turner] does not say whether there is a representation or not, but *false* representation; that is, he goes back to his fundamental proposition: No man can have the right to represent his goods as the goods of another person. Therefore, if a man uses his own name, that is no *prima facie* case; but if, besides using his own name, he does other things which show that he is intending to represent, and is, in point of fact, making his goods represent, the goods of another person, then he is to be prohibited, but not otherwise." This quotation seems to me to be specially important, because it appears to represent the view which the supreme court of the United States has taken of this question in the very recent case of *Howe Scale Co.* v. *Wykcoff, Seamans & Benedict, 198 U. S. 118,* a case to which I will presently advert.

The same idea is expressed by Lord-Justice Lindley in the recent case of *Jamieson* v. *Jamieson, 15 Rep. Pat. Cas. 169 (1898)* : "It is said, because yours may be mistaken for ours, you are bound to take extra precautions to prevent yours from being mistaken for ours. I am not aware of any case that goes so far as that. * * * In all cases in which a person has been restrained from carrying on business in his own name he has done something more than use his name. He has copied something from somebody else in the trade, or he has gone out of his way to make his things look like those of his rival in the trade, as was the case in *Holloway* v. *Holloway,* and as was the case, I believe, in one or two others."

In *Duryea* v. *Manufacturing Company, 79 Fed. Rep. 651,* complainants called their preparation "Duryea's Starch." Justice Shipman said that by continuous and rightful user for forty years this name had become identified with its source of manufacture, and that while no one else of the name of Duryea could call his starch "Duryea's Starch," yet the defendant might, as he was doing, place on his package the words "Laundry Starch,

prepared by Duryea & Company," such statement being in accordance with the truth.

I have already referred, on another point, to the case of *Brown Chemical Co.* v. *Meyer, 139 U. S. 542.* There the plaintiffs had for many years been engaged in the preparation of a medicine known as "Brown's Iron Bitters." After these bitters had acquired considerable reputation, one E. L. Brown, in connection with one Lincold, put up and sold another preparation called "Brown's Iron Tonic." An injunction was refused. Mr. Justice Brown said: "It is hardly necessary to say that an ordinary surname cannot be appropriated as a trade mark by any one person as against others of the same name who are using it for a legitimate purpose." After adverting to the cases of *Croft* v. *Day, Holloway* v. *Holloway* and *McLean* v. *Fleming,* in which latter case a person was enjoined from using his own name in connection with certain pills, upon the ground that they were put up in such form as to mislead purchasers into buying defendant's article for plaintiff's, the justice continued: "These cases obviously apply only where the defendant *adds* to his own name imitations of the plaintiff's labels, boxes or packages, and thereby induces the public to believe that his goods are those of the plaintiff. A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property. If such use be a fair, honest and reasonable exercise of such right, he is no more liable for the incidental damage he may do to a rival in trade than he would be for injury to his neighbor's property by the smoke issuing from his chimney, or for the fall of his neighbor's house by reason of necessary excavations upon his own land. These and similar instances are cases of *damnum absque injuria.*"

The complainant largely relies upon certain cases in the United States circuit court founded on the case of *Singer Manufacturing Co.* v. *June Manufacturing Co., 163 U. S. 169.* That was a case in which a kind of sewing machines, which had come to be known by the name "Singer Machines," had been manufactured under certain patents which had expired. The court held that the right to make the patented article and to use the generic name "Singer" had, on the expiration of the pat-

ents, passed to the public, but that anyone manufacturing the machine and using the name was compellable to indicate that the article was made *by him,* and not by the proprietors of the expired patents. This case differs from that in hand in the material circumstances that the subsequent manufacturer, having acquired a *new* right by dedication, was not allowed to avail himself of it in such a manner as to mislead ordinary purchasers. The putting out of a machine under its generic name—a machine which the original manufacturer had had for many years the exclusive right to make—without informing the public that it was in fact made by another manufacturer, would be likely to confuse and mislead. What the court required in that case, and all that it required, was a plain statement that the machine was made by the corporation which actually made it. Its application to a case in which the effort is to restrain or limit the use of one's own name as the maker of the goods he puts out is not very obvious. That the supreme court so thought appears from its very recent decision in *Howe Scale Co.* v. *Wykcoff, Seamans & Benedict, 198 U. S. 118,* decided since the case in hand was passed upon by the court of errors and appeals. That was an appeal from the circuit court of appeals, which had affirmed a decree enjoining the use of the word "Remington" in the corporate name "Remington-Sholes Company." The decree was reversed. The question was, indeed, whether the word "Remington" might be used as part of a corporate name, but the decision is all the stronger for that reason. The individual does not choose his name. The corporation does. Whatever name it takes, it takes without necessity. After quoting from the opinion of Justice Brown, to which I have already referred, and after saying that it is dishonesty in the use that is condemned, and not the use itself, Chief-Justice Fuller quotes, with approval, the following passage from the judgment of Lord Esher in *Turton* v. *Turton:* "Therefore the proposition goes to this length, that if a man is in business, and has so carried on his business that his name has become a value in the market, and another man comes and carries on business, he must discard his own name and take a false name. The proposition seems to me so monstrous that the statement of it carries its own refutation."

The chief-justice sums up the entire matter as follows: "We hold that, in the absence of contract, fraud or estoppel, any man may use his own name in all legitimate ways, and as the whole or a part of a corporate name."

It is hardly necessary to refer to the many other cases cited in the briefs of counsel. None of them, so far as I am able to see, lay down any different principle. I have not been referred to any case in which a man has been enjoined from using his own name, if he does so honestly. No authoritative case decides that the bare use of one's name, in the way in which one has always used it, is evidence of fraudulent intent. It is argued that the subsequent manufacturer should, when he uses his name, inform the public that his goods are not the goods of the original manufacturer. To put this burden upon him would, or might, put him at a disadvantage—discredit his goods at the outset. If it did, it would amount to a partial deprivation of the right to use his name. But if a man's name be, in the words of Mr. Justice Brown, his own property, and if he has the same right to its use and enjoyment that he has to any other property, he cannot be fettered with limitations imposed for the benefit of another of the same name, for that would be to give that other a more ample right to its use. There is no hardship in this, for the original manufacturer must know that he has no exclusive right in his name as against others of the same name. If he wishes to differentiate his goods from others he may adopt a fancy name or a trade mark, either of which will afford him adequate protection.

I now come to the facts. In my previous opinion I have fully stated the defendant's (W. H. Rogers) connection with the silver-plated business from the time it began in 1898 to the filing of the original bill in June, 1902. It therein appears that his first effort was to have the name "Wm. H. Rogers Co." (by which he indicated himself and an inactive partner, Hubbard) stamped upon goods made and put up in packages by another manufacturer. These goods he himself sold. When the partnership was dissolved he contracted, for a royalty, to give to the Benedict Company, a firm manufacturing silver-plated ware

under its own name, the right to use that name upon its manufacture. The goods thus manufactured were sold by that firm.

Up to this point nothing could be clearer than that he was engaged or co-operating in a fraudulent attempt to pass off goods stamped with his name as the goods of the Connecticut Rogers. The *indicia* of fraud were (1) the use of the abbreviation "Wm.," in imitation of the name "Wm. Rogers" and "Wm. Rogers Manufacturing Co.;" he had always theretofore done business in the name of "W. H. Rogers;" (2) the fact that he himself was neither a manufacturer of silver-plated ware nor otherwise known, and that his name stamped upon such ware could subserve no purpose other than that of inducing the erroneous belief that his goods were those of the Connecticut Rogers; (3) his contract with the Benedict Company, who agreed to pay him a price for the mere use of his name in the objectionable form, "Wm."—a contract that nobody would have made with him had his name been Smith or Jones, or some other name unknown to the trade. When the Wm. H. Rogers corporation was formed the situation became, to some extent, different. The fraud was not so bald. He organized this company under advice of counsel, and his effort no doubt was to sail as close to the line as he could without crossing it. But he did cross it. The company was made a legatee of the fraudulent business, and it took, without necessity, the objectionable abbreviation, "Wm." It was the company that was enjoined from the use of this name by the decree made in the original bill.

No one of these *indicia* of fraud are to be found in the case as it now presents itself. The defendant is an actual manufacturer. He has become familiar with every detail of the business. He claims to have a patented process for applying silver in solution superior to the process employed in complainant's many factories. He carries on business under the name by which he has always been known, "W. H. Rogers." He makes an excellent grade of silver plate. Every mark or stamp that he puts upon it, or upon the boxes or wrappers that enclose it, and all his advertisements, serve to differentiate it from, and not to confound it with, the goods of complainant. Thus he stamps upon every knife, fork and spoon of his manufacture, in type of equal

size, the words "W. H. Rogers of Plainfield, N. J." On a band around each knife are the words "W. H. Rogers of Plainfield, N. J. Not connected with any other Rogers." On every package of spoons and forks is a sticker containing the same words. He advertises himself as "W. H. Rogers, manufacturer of very best silver-plated ware, of Plainfield, N. J. Not connected with any other Rogers." It is not pretended that the defendant is in any way imitating the complainant's wares, or the packages, boxes or wrappers in which they are contained. The only complaint is that because, in using his own name, he may be getting some of the trade that would otherwise go to complainant, he should further differentiate his manufacture from that of complainant's by stamping upon the ware itself the words "Not connected with the *original* Rogers." This was, as the complainant's counsel admitted, when pressed, the only suggestion in the way of further differentiation that they could offer. Now, aside from the fact that the proposed form of words may perhaps suggest contrary to the fact that the original Rogers is living and competing for the trade, when in fact he and his sons died many years ago, and the name in the hands of complainant is purely a trade name, there are two answers to the complainant's contention—*first,* defendant is not obliged to injure his plate by putting upon it matter which other makers do not put upon it, and which might tend to disfigure it and make it less salable, and *secondly,* under the authorities cited, he is under no legal obligation to do anything more than use his own name fairly. The mere use of his name, in the way in which he has always used it, does not, according to these authorities, give rise to a presumption of fraud. With the suggestion that he should, because of past misconduct, be prevented from using it at all, or from using it as anyone else might use it, I have already dealt. This court does not punish past misconduct by prohibiting the doing in the future of that which is lawful *per se.*

Complainant's final contention is that the term "Rogers goods" has acquired a secondary meaning; that it means complainant's goods. Conceding, for the sake of the argument, that it has that meaning, complainant's case fails, for there is no proof that complainant calls his goods "Rogers goods." What

he does announce is that his ware is made by W. H. Rogers, of Plainfield, N. J. In every authoritative case upon the subject this distinction is vital. Thus, in *Montgomery* v. *Thompson, A. C. 217 (1891)*, the defendant was enjoined from calling his ale "Stone Ale," but it was conceded that he might state that it was made at the town of Stone. In *Reddaway* v. *Banham, A. C. 199 (1896)*, while the defendant was prohibited from calling his belting "Camel Hair Belting," that phrase having, at least as against defendant, come to mean in the trade the plaintiff's belting, and nothing else, it was conceded that any manufacturer might inform the public that his belting was made of camel's hair, if such were the fact. In the still later case of *Cellular Clothing Co.* v. *Maxton & Murray, A. C. 326 (1899)*, in which *Reddaway* v. *Banham* is explained, one of the lords says that he thought that it should be made impossible for anyone to obtain the exclusive right to the use of a word or term which is in ordinary use in our language, and which is descriptive only (and proper names are always put in the same category), and goes on to say that were it not for *Reddaway* v. *Banham* he should have said that this should be made altogether impossible. The American cases are to the same effect. In *W. Baker Co.* v. *Saunders, 80 Fed. Rep. 889*, already cited, while W. H. Baker was prohibited from calling his manufacture "Baker's Chocolate," he was allowed to say that his preparation was made by W. H. Baker. In *Duryea* v. *Manufacturing Company, 79 Fed. Rep. 651*, the court refused, on the application of a plaintiff, who called his starch "Duryea's Starch," to enjoin the use by defendant of the words "Laundry Starch, prepared by Duryea & Co." Indeed, I have not found any decision in which the right of a person to announce to the public that he was the maker of the goods was denied on the ground that his proper name had theretofore acquired a secondary meaning as applied to goods of that kind, and that therefore he could not use it in connection with his manufacture, except the decision of Justice Kekewich, in *Cash* v. *Cash, 84 L. T. R. 349 (1901)*. There it was held that inasmuch as the plaintiffs had established a reputation for making Cash's frillings, and inasmuch as the defendant, Joseph Cash, had also commenced to make and sell frillings, and

there was a likelihood that the public might in time come to denominate his (Joseph's) frillings as Cash's frillings, to the injury of plaintiffs, Joseph Cash should be enjoined from selling any frillings at all. This rather astonishing decision, which, so far as my examination has gone, stands alone, was corrected by the appellate court and the decree made to conform to the established rule. *86 L. T. 211 (1902)*.

Under these and other decisions that might be cited, it is plain that defendant could not be enjoined from stating that the goods were made by him merely because "Rogers goods" had come to mean goods made exclusively by complainants.

I think the complainant's bill should be dismissed.