MILLER RUBBER CO. v. BEHREND et al.

(Circuit Court of Appeals, Second Circuit. February 28, 1917.)

No. 151.

1. PATENTS ⬅➡328—INVENTION—DESIGN FOR TOY BALLOON.

The Brucker design patent, No. 48,150, for a design for a toy balloon having the shape and appearance of a watermelon, *held* void for lack of invention.

2. PATENTS ⬅➡285—INFRINGEMENT—JOINDER OF CAUSES OF ACTION.

Under equity rule 26 (201 Fed. v, 118 C. C. A. v), which permits a complainant to join in one bill as many equitable causes of action as he may have against the defendant, a cause of action for infringement of a patent and one for unfair competition may be joined, where the necessary diversity of citizenship exists.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 445.]

3. TRADE-MARKS AND TRADE-NAMES ⬅➡70(1)—"UNFAIR COMPETITION"—SIMILARITY OF GOODS.

The essence of "unfair competition" is fraud, which is a question of fact, and it is sufficient to make out a case to show that the natural and probable result of defendant's conduct is to deceive ordinary purchasers, buying under ordinary conditions, into taking his goods as those of complainant; but, while similarity is evidence from which an intention to deceive may be inferred, similarity alone is not conclusive as a matter of law.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.

For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

4. TRADE-MARKS AND TRADE-NAMES ⬅➡93(3)—UNFAIR COMPETITION.

Both complainant and defendant made and sold toy balloons, which, when inflated, resembled a watermelon in shape and coloring; complainant being first in the field. Defendant sold only to jobbers and wholesale dealers. *Held*, that defendant was not chargeable with unfair competition, because of the shape or coloring of its balloons, those of both parties being copies of another object in that respect, nor because, without defendant's knowledge, street venders in some cases exhibited one of complainant's balloons, but delivered to their customers those made by defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 106.]

5. PATENTS ⬅➡328—INVENTION—TOY BALLOON.

The Brucker patent, No. 1,136,932, for a toy balloon, discloses improvements in the valve mechanism, but such as required only mechanical skill to devise, and is void for lack of invention.

6. PATENTS ⬅➡165—CONSTRUCTION—REFERENCE TO SPECIFICATION.

The claim in a patent is the measure of the invention; but the claims are to be construed in the light of the specification, which may limit but cannot expand them.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 241.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Miller Rubber Company against Albert Behrend and Joseph Rothschild, doing business as Behrend & Rothschild. Decree for defendants, and complainant appeals. Affirmed.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff is a corporation organized under the laws of the state of Ohio. The defendants are citizens of the state of New York and reside in the city of New York. The defendants are charged with the infringement of letters patent No. 1,136,932, issued on April 27, 1915, and of letters patent No. 48,150, granted on November 16, 1915, both of which were issued to the plaintiff as assignee of Ferdinand F. Brucker. The first relates to a mechanical patent. The second relates to a design patent. Defendants are also charged with unfair competition in trade. Defendants deny the validity of both patents and rely on the prior art. It is also alleged that the design patent is void, in that the claim covers a device not provided for in the statutes of the United States as constituting proper subject-matter of a patent for an ornamental design. The District Judge dismissed the bill.

Otto Munk, of New York City (William F. Hall, of Washington, D. C., of counsel), for appellant.

Philip C. Peck, of New York City, for appellees.

Before COXE, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The plaintiff is a manufacturer of toy balloons, its sales amounting to about $150,000 a year. It appears that there are many toy balloon manufacturers throughout the country, and that the aggregate sale of such balloons runs into a substantial sum of money.

The balloons of the patent in suit are known as "watermelon balloons," because of the striped markings which bear a resemblance to the markings on watermelons, and because of their resemblance to watermelons as respects their shape. The balloon of the defendants is in shape claimed by them to represent a football, but it has dark blue stripings, which resemble the watermelon stripings used by the plaintiff on its balloons. The number of the balloons the defendants sold amounted to 100,000 or more a year.

The defendants have introduced in evidence 12 patents, granted prior to the patents in suit, to show that the alleged inventions of the patents in suit had been known in this country before the plaintiff's supposed invention or discovery. The toy balloon art, as shown by the record, dates back to the year 1896.

[1] In his specification for the design patent, Brucker claims to have invented "a new, original, and ornamental design" for toy balloons; reference being had to the accompanying drawing. The drawing has the shape of a watermelon, and the general appearance of the striping to be found in watermelons. This court decided in Steffens v. Steiner, 232 Fed. 862, 147 C. C. A. 56, that:

"To sustain a design patent, the design must involve something more than mere mechanical skill. There must be invention."

See, also, Strause v. William M. Crane Co., 235 Fed. 126.

And in Denton v. Fulda, 225 Fed. 537, 140 C. C. A. 521, the court declared that there is nothing novel in a design which copies something well known in life. The design in that case was of a butterfly. In this it is of a watermelon. The one is as lacking in novelty as the other. There can be no pretense that making a balloon, or any other object, to look like a watermelon, involves invention. If we were to hold that it does, we should be compelled to include the whole catalogue of fruits and vegetables, and sustain a design for balloons made to

resemble a cucumber, a pumpkin, a cabbage, or a potato. To discriminate in favor of one against the other would be an arbitrary act. The design patent, No. 48,150, is void for want of invention.

This brings us in the same connection to consider the charge of unfair competition. In George Frost Co. v. Kora Co. (C. C.) 136 Fed. 487, 489 (1904), Judge Coxe, sitting in the Circuit Court for the Southern District of New York, held that defendant in an infringement suit could not have affirmative relief therein for unfair competition on the ground that it constituted a separate and distinct cause of action. This decision was affirmed without opinion by this court in 140 Fed. 987, 71 C. C. A. 19. And this court in New Departure Mfg. Co. v. Sargent & Co., 127 Fed. 152, 62 C. C. A. 266 (1903), had declared, speaking through Judge Lacombe, that:

"Of course, in this suit for infringement of a patent, we cannot inquire into the apparently unfair devices in the way of get up, ornamentation, etc., by which it is suggested that defendants are seeking to deceive the public into a belief that their bells are those of the complainant."

Counsel for defendants in their brief call attention to the above decision, and say that the charges of unfair trade cannot be considered, and that the plaintiff must stand or fall upon the validity of his patent. We do not doubt the correctness of the above decision. But the bill which unites these two causes of action was not objected to on that ground in the lower court. The Supreme Court of the United States has held in several cases that the objection that a bill is multifarious cannot be taken by a party in the appellate court. Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622 (1845); Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514 (1880). It was also declared in those cases that the court might take the objection, but that it would not do so unless it deemed such a course necessary or proper to assist in the due administration of justice. In the case now before us it may assist in the administration of justice as between these parties if we pass on the question of unfair competition which is raised by the pleadings and decided by the court below.

[2] There is however another and conclusive reason why this court should consider the question. This suit was commenced after the promulgation of the new rules in equity. Under rule 26 (201 Fed. v, 118 C. C. A. v), it is provided that the plaintiff may join in one bill as many causes of action, cognizable in equity, as he may have against the defendant. That rule requires that, if there be more than one defendant, the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice. Under this rule, provided the diversity of citizenship exists, and it does exist in this case, we see no reason why the plaintiff was not entitled to join in one bill its cause of action on the patent and its cause of action for unfair competition.

To establish the alleged unfair competition, evidence was introduced of sales made by street fakirs in the city of New York. The fakirs exhibited the balloon of the plaintiff, and when the sale was made they gave a small balloon in an envelope, which turned out to be the

balloon of the defendant. The isolated instances of the transactions with the street vendors was not in any manner brought home to the defendants. They sell only to wholesalers and jobbing houses, and are not to be held responsible for unscrupulous methods adopted by itinerant vendors to attract attention and sell their goods to the passing public, without a semblance of proof of knowledge of their practices brought to the attention of defendants. This testimony is of too flimsy a character to support a charge against the defendants of unfair competition. The gravamen of any unfair trade charge is fraud, and this testimony does not connect the defendants in any way with the vendors on the street.

[3] Unfair competition is a question of fact. Howe Scale Co. v. Wyckoff, 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972. To make out a case it is sufficient to show that the natural and probable result of defendant's conduct will be to lead the public to purchase his goods in the belief that they are the goods of the plaintiff. If the conduct would deceive the ordinary buyer, making his purchases under the ordinary conditions, it is unfair competition. And the law is that a wrongful imitation for a fraudulent purpose will be enjoined. International Silver Co. v. Rodgers Bros. Cutlery Co. (C. C.) 136 Fed. 1019; O'Grady v. McDonald, 72 N. J. Eq. 805, 66 Atl. 175; Keasbey v. Brooklyn Chemical Works, 142 N. Y. 467, 37 N. E. 476, 40 Am. St. Rep. 623. In 38 Cyc. 787, the law is correctly stated as follows:

"Mere similarity is not, as a matter of law, conclusive evidence of an intention to deceive. But such intent may be inferred, as a matter of fact, from similarity. Form, color, and general appearance may be considered. The greater the number of points of similarity, the stronger is the inference of an intentional imitation with intent to deceive."

[4] The defendant's balloons are substantially the plaintiff's in appearance, design and purpose. That the plaintiff cannot complain of the shape of the balloons of defendant cannot seriously be questioned. But whether the defendant should be permitted to stripe its balloons in a manner which is an obvious imitation of the plaintiff's, and which has no relation to the working or excellence of the balloon, is a different question, and not so easily answered. We think, however, that, as no one is entitled to a monopoly of a toy balloon made in imitation of a watermelon, the fact that one was the first to make and sell such a balloon as a novelty does not render its manufacture and sale by another unfair competition, where there is no attempt to deceive purchasers as to origin of manufacture by imitation of dress, mark, or label, but the likeness is in the article itself, because both are copies of another article. That was the rule laid down by the Circuit Court of Appeals in the Third Circuit in an opinion which reviews the prior cases, and in which the article involved was a desk telephone. Rice & Co. v. Redlich Co., 202 Fed. 155, 122 C. C. A. 442, 44 L. R. A. (N. S.) 1057. See, also, Steiff v. Bing (D. C.) 215 Fed. 204, 208. It appears to us that the principle announced by that court is sound, and that it governs this case in the matter now under consideration. The likeness complained of here is the likeness in the watermelon itself—in the stripes of the watermelon. There is no evidence, therefore, to support the charge of unfair competition in trade.

[5] The question as to the validity of the mechanical patent remains to be considered. The alleged invention is stated in the specification to relate to a toy balloon "which is inflated by blowing air through a mouthpiece and can be deflated at will by allowing the air to escape from the same." The specification declares that the principle object of the invention consists in applying to a balloon of the type described an improved form of valve mechanism for maintaining the air within the balloon when the latter is in its inflated condition, and also for controlling the escape of the air as the balloon is deflated, and that a further object consists in providing a detachable thimble-shaped cup or shell, adapted to be inserted and retained in the mouthpiece of the balloon, and having at its inner end a small check valve.

The claims are two. Claim 1 reads as follows:

"A toy balloon having a tubular neck or mouthpiece integral therewith, a conical cup-shaped member adapted to be inserted and retained in said neck, a self-closing valve formed in the inner end of said member, substantially as described."

Claim 2 reads as follows:

"A toy balloon having a tubular neck or mouthpiece, a cup-shaped member having inwardly tapering walls, said member being insertable in said neckpiece, a self-closing valve at the inner closed end of said member, and a reinforcing ring surrounding the outer end of said neck or mouthpiece, substantially as described."

It may serve a good purpose to state these elements separately as follows:

### Claim 1.

(1) A tubular neck or mouthpiece integral therewith.

(2) A conical cup-shaped member adapted to be inserted and retained in said neck.

(3) A self-closing valve formed in the inner end of said member.

### Claim 2.

(1) A tubular neck or mouthpiece.

(2) A cup-shaped member having inwardly tapering walls, said member being insertable in said neckpiece.

(3) A self-closing valve at the inner closed end of said member.

(4) A reinforcing ring surrounding the outer end of said neck or mouthpiece.

In passing on this patent the District Judge expressed himself as follows:

"I am inclined to think that the Gregory patent anticipated the patent in suit, but, whether it does or not, it is quite certain that, in the state of the art shown by the prior use and all the prior paper patents, what Brucker did did not amount to invention. It seems to me that he made what may be called an improvement of a character which does not topple over into the field of invention."

It is undoubtedly true that the most important patent of the prior art is the Gregory patent, No. 1,008,641, which was issued to Thomas M. Gregory on November 14, 1911. The Gregory patent has:

(1) A tubular neck or mouthpiece integral with the hollow body.

(2) A conical cup-shaped member.

(3) A self-closing or "self-sealing" valve on the inner end.

And a comparison of the specifications of the patent in suit and the Gregory patent shows how closely Brucker followed Gregory:

### The Patent in Suit.

"The balloon comprises a hollow body B of thin rubber of pure quality and extreme elasticity, which will permit of its being inflated and being expanded to many times its normal size."

"It is 'provided with a tubular neck or mouthpiece C extending from one end. The outer end of the neckpiece C of the balloon is provided with a reinforcing ring c.' "

"The valve mechanism which is adapted to be inserted in the neckpiece C comprises a cup-shaped member 1, open at its outer end and having a small valve port 2 at its inner end adapted to be closed by a small check valve 3. * * * The walls of the cup-shaped member 1 taper inwardly toward the inner end of the neck C."

"This form of valve mechanism tends to keep the walls of the mouthpiece c always in a distended condition."

"The cup-shaped member 1 is inserted in the mouth-piece of the balloon and cemented therein."

"The valve, after the balloon has once been inflated, is held closed by the pressure of the air within, and in order to deflate the balloon it is only necessary to squeeze the neck c near its inner end."

### The Gregory Patent.

"The balloon comprises a hollow body A made of thin rubber of pure quality and extreme elasticity which will permit the body to be inflated and expanded to many times its normal diameter.

"I provide body A with a relatively short tubular nipple 2 having an annular bead 3 at the mouth thereof—both nipple and bead being of rubber and formed integral with the wall 4 of the balloon."

"I add a valve member 5 which is self-sealing in effect, and also particularly construct this valve member to co-operate with nipple 2 to permit radial expansion and longitudinal shortening thereof during inflation. Thus valve member 5 comprises a flat tube of rubber wherein the flat sides are permanently in contact, except when forcibly separated by inserting an instrument of any kind therein, such as a toothpick or match, or when expanded into more or less circular form by attachment to a supporting wall such as a mouthpiece or nipple 2 as in this case. That is to say, member 5 is expanded and kept open at one end by making a fixed or homogeneous union with round nipple 2, bead 3 being quite stiff enough to retain a round shape, whereas the outer end of said tube is projected into the interior of hollow body A and remains flat. Furthermore, member 5 is thicker than body A and of a different grade of rubber, and an airtight union is effected between the parts by steps involving the use of cement acid or other means."

"When the balloon is inflated more or less, valve member 5 is sealed or held shut by the compressed air within the balloon said air pressing the flat sides of the tube together. * * *

"As a toy this balloon has decided advantages over other known balloons on the market, being inflatable and deflatable at the will of the operator and having inherent features to safeguard undue inflation and bursting. Moreover, the self-sealing valve will retain the balloon at any expanded diameter within the limits of safety as herein provided for."

But the "self-sealing valve" of the Gregory patent is not the "improved form of valve mechanism of the patent in suit." The testimony shows that in order to deflate the balloon of the Gregory patent it was necessary to insert an instrument of some sort, such as a pencil or the like, into the tubular nipple or mouthpiece of the balloon. And the Gregory specifications are silent on the subject of the deflation of the balloon. The specifications allege that:

"Two novel features enter into the invention, comprising, first, the inflation of the balloon and withdrawal and shortening of the mouthpiece when sufficient or maximum inflation is attained; and, second, the self-sealing of the balloon during and after inflation."

The objects of the patent in suit are defined as follows:

"The principal object of the invention consists in applying to a balloon of this type an improved form of valve mechanism for maintaining the air within the balloon when the latter is in its inflated condition and also for controlling the escape of the air as the balloon is deflated. A further object consists in providing a detachable thimble-shaped cup or shell adapted to be inserted and retained in the mouthpiece of the balloon and having at its inner end a small check valve."

Again the specification states:

"In both forms of the invention the valve, after the balloon has once been inflated, is held closed by the pressure of the air within, and in order to deflate the balloon it is only necessary to squeeze the neck $c$ near its inner end, so as to slightly dislodge either the valve $3$ or $4$ as the case may be. This form of valve mechanism tends to keep the walls of the mouthpiece $c$ always in a distended condition."

The testimony is—notwithstanding the silence of the Gregory specifications—that originally it was claimed for the Gregory balloons that they could be deflated by squeezing; "but, when it was tried out, they found that it did not work properly, and now they explain how to use it by the use of an instrument to do that." This testimony comes from a witness who is connected with the business of the defendant and who was called by the plaintiff. Gregory originally thought his structure could be deflated by squeezing, but later found that this could not be done. He had failed to solve that problem. The plaintiff solved it.

We therefore think that the court erred in holding that Gregory anticipated the patent in suit. It is true that neither Gregory nor Brucker included this function in express terms in their claims.

[6] It is also true that the claims fix the extent of the protection furnished by a patent. The claim in the patent is the measure of the invention. National Enameling & Stamping Co. v. New England Enameling Co., 151 Fed. 19, 80 C. C. A. 485. The specification, however, may be referred to in construing the patent, and it is well understood that the claims are to be construed in the light of the specification: while the specification is never available for the purpose of expanding a claim, although it may be referred to for the purpose of limiting it. We so held in Fowler & Wolfe Mfg. Co. v. McCrum-Howell Co., 215 Fed. 905, 909, 132 C. C. A. 143. This principle should be applied to the claims of the patent in suit.

In claim 1 the patentee claims a self-closing valve "substantially as described," and in claim 2 he claims a self-closing valve "substantially

as described." Then in the specification he describes the valve as follows:

"To allow the air to come out when wished, the neck of the balloon at *i*, just above the end of tube *B*, is squeezed with the valve inside between the thumb and finger, and that end of the valve which is closed will be made to open and allow the air to be forced out by the contractile force of the rubber balloon."

In Figure 1 as described we have a stiff, rigid, celluloid or papier-maché neck inserted in the rubber orifice of the balloon. This terminates in *3*, which is shown at large in Figure 5. This end of the inflating apparatus as shown in Figure 5 is all of rubber. The essential facts about this mechanism are that *3* of Figure 5 is a gate or flap valve, and that both this gate and its immediately surrounding parts are of rubber and therefore compressible.

The modification shown in Figure 4 is what the patentee calls a tack valve. It can be seen that this apparatus has a certain amount of play between the stopper, shown as a crossbar inside the tube *1*, and the mushroom like extension numbered *4*. The air being blown through at *4* compresses the stopper against the conical interior of the tube; pressure on *4* lets air escape around the edges, while pressure on the other model opens partially the gate *3*.

But, even if the self-closing valve of the claims be read in the light of the description in the specification, we do not think the patent can be sustained. What the patentee did, in view of the prior use and all the prior patents, did not amount to invention. Nothing but mechanical skill was needed to make the simple changes the patentee made over the prior art.

Decree affirmed.