## HUNYADI JANOS CORPORATION v. STOEGER.

(Circuit Court of Appeals, Second Circuit. December 7, 1925.)

No. 171.

**1. Courts ⬄292—Federal courts cannot consider charges of unfair competition in suit between citizens of same state.**

Federal courts have no jurisdiction, in suit between citizens of same state, to consider charges of unfair competition, and cannot enjoin simulation of bottle forms or other unfair practices.

**2. Courts ⬄292—Federal courts cannot enforce common-law trade-mark rights between citizens of same state.**

Federal courts have no jurisdiction to enforce common-law trade-mark rights as between citizens of same state.

**3. Trade-marks and trade-names and unfair competition ⬄97—Defendant cannot be enjoined from doing acts not done or threatened.**

Defendant, in trade-mark infringement suit, cannot be enjoined from doing acts not done or threatened.

**4. Trade-marks and trade-names and unfair competition ⬄88—Purchaser of trade-mark not entitled to injunction against infringement, without showing alien registrant's location in country affording similar privileges to American citizens.**

Purchaser of good will and trade-names, trade-marks, etc., of seized business from Alien Property Custodian, held not entitled to enjoin infringement of mark No. 14251, registered under Act March 3, 1881, in absence of showing that alien registrant was located in a country affording similar privileges to citizens of United States.

**5. Trade-marks and trade-names and unfair competition ⬄88—Purchaser of business and trade-marks thereof from Alien Property Custodian not entitled to enjoin infringement of registrations not seized or mentioned in instrument of transfer.**

Purchaser of trade-names, trade-marks, etc., of seized business from Alien Property

Custodian, held not entitled to injunction against infringement of registrations Nos. 73036, 73037, which were not seized nor specifically mentioned in instrument of transfer, especially where such business did not own marks, which belonged to registrant.

**6. Contracts ⬄156—General terms limited by special designations.**

General terms are limited by special designations.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Hunyadi Janos Corporation against Alexander F. Stoeger. From a decree for plaintiff (5 F.[2d] 506), defendant appeals. Reversed and remanded, with directions to dismiss bill.

This is the same suit reported in 285 F. 861. We there affirmed an order denying preliminary injunction. Thereafter the bill of complaint was amended, trial held, and by the decree appealed from plaintiff was declared the owner, inter alia, of certain United States trade-mark registrations numbered 14,251, 14,252, 73,036, and 73,037. Defendant was declared to have infringed the "trade-mark rights of plaintiff" by selling mineral water under the names "Hunyadi Janos" and "Andreas Saxlehner," or one or both of said names. Defendant was ordered to be enjoined from importing, selling or offering for sale in bottles, bulk or any form whatever, any mineral water under or in connection with the name "Hunyadi Janos," or "Janos," or the medallion of a knight's head, or the name "Andreas Saxlehner," or any combination thereof, or in bottles similar in shape to plaintiff's bottle. The decree contains further prohibition against using bottles or other containers similar in shape or design to the bottles or containers of the plaintiff.

The subject-matter of the suit is in one sense Hunyadi water, and the history of the name, the thing, and its use in the United States is set forth in Saxlehner v. Eisner, 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60. The plaintiff is the assignee by mesne conveyance of the Alien Property Custodian, as is set forth in the report in (C. C. A.) 285 F. 861.

The Custodian seized and sold the two trade-marks first above enumerated, Nos. 14,251, 14,252. He never seized or otherwise sought to appropriate trade-marks 73,036, 73,037. He did seize and sell what he called the "business conducted for, in the name of, or on behalf of [the Austro-Hungarian owners of these trade-marks] at 130 Fulton

street, New York." It is amply shown that this place of business was a mere agency; there was no independent business there conducted; the place was occupied by a person or persons who might be described as clerks employed by the foreign owners of the trade-marks above mentioned and others, and of the business of getting out of the Hungarian soil a cathartic water known in America as Hunyadi and selling it, not only in the United States, but in many other regions.

The plaintiff is a citizen of the state of New York, and so is the defendant, and the latter was held to have infringed because he had obtained in Europe and imported and offered for sale in the United States the water which Saxlehner the owner had, before the United States entered the world war, regularly sent to his agent at 130 Fulton street for sale in America.

From final decree as above outlined defendant appealed.

Hans v. Briesen and Fred A. Klein, both of New York City, for appellant.

Harry D. Nims and Minturn De S. Verdi, both of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Since this suit is between citizens of the same state, there is no jurisdiction to consider the charges of unfair competition, and consequently no propriety in enjoining the defendant from simulation of bottle forms and other allegedly unfair practices. In this respect at least the decree complained of was erroneous.

[2] Jurisdiction rests entirely on the fact that the suit is upon registered trade-marks. Section 17, Act Feb. 20, 1905 (Comp. St., § 9502). If there ever was a business at 130 Fulton street of sufficient independent vitality to be seized by the Custodian, it may well be that as appurtenant to that business various rights, including what are usually called common-law trade-marks, have passed to the plaintiff. Stephano v. Stamatopoulos, 238 F. 89, 151 C. C. A. 165, L. R. A. 1917C, 1157. But the statutes have given to the courts of the United States no jurisdiction to enforce such rights between citizens of the same state. Miller Rubber Co. v. Behrend, 242 F. 515, 155 C. C. A. 291.

[3] But not only must plaintiff rest in this action upon its ownership of certain registered trade-marks, but defendant cannot be enjoined from acts it has not done nor threatened to do. Several registrations seized by the Custodian and now said to be the plaintiff's property relate to pills, and others to salts produced by concentration from Hunyadi water. But this defendant has not made nor offered to sell pills or salts. The portions of decree relating to these articles of commerce are surplusage.

[4] Again, in this suit upon registered trade-marks only, plaintiff to prevail must prove himself the owner of registrations covering the words "Hunyadi Janos" as applied to a natural mineral water. This compels a stand upon one at least of the above enumerated registrations.

Nos. 14,251, 14,252 may be considered together. They were both taken out on the same date in 1887 under the act of 1881 (21 Stat. 502). Both pictorially set forth the same label and legend, but 14,251 was particularly restricted to protection of the word symbol "Janos" as a trade-mark for natural aperient water. The statement says so; whereas 14,252 is equally plain as to intent to protect the word symbol "Hunyadi." We are of opinion that protection for the word "Hunyadi" simpliciter was destroyed by Saxlehner v. Eisner, 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60.

As to the registration of "Janos," there is no proof that the Saxlehner who filed that trade-mark was, as provided by the act (21 Stat. 502), located in a "foreign country * * * which by treaty, convention or law, affords similar privileges to citizens of the United States"; i. e., the privilege of obtaining registration of such trade-marks. Neither the statement nor declaration of No. 14,251 gives any information on the subject, and there is nothing in the evidence. Cf., for necessity of proof of jurisdictional facts under act of 1881. Warner v. Searle, 191 U. S. 195, 24 S. Ct. 79, 48 L. Ed. 145.

[5] Quite evidently, the descendants of the Andreas Saxlehner who founded the business and died in 1889 did not, after the act of 1905 became effective, intend to stand on such precarious rights as were afforded by registration under the act of 1881, for they took out in 1909 registrations 73,036, 73,037, of which the earliest number covers the word "Janos," for natural mineral water, and the later number "Hunyadi Janos," for the same product. As above noted, these registrations were never seized. They are not mentioned in the original or amended bill of complaint; but it is said that, because the Custodian transferred to plaintiff's assignor the 130 Fulton street business "as a going concern," together with "the good will of said business

and all trade-names, trade-marks and labels of said business, * * * including the following trade-marks," then enumerated (not including the registrations under consideration), plaintiff became the owner of these two registrations, without seizure and without specific mention in the instrument of transfer, by virtue of conveyance of the business.

[6] We cannot agree; for the Custodian could not sell that which he had not seized, and he never in any way became seized or possessed of these registrations. In respect of them he gave no notice of appropriation to the Patent Office, and as to the general words of the conveyance it is always true that general terms are held to be limited by special designations. 1 Cyc. p. 74. But further, while we express no opinion as to whether the agency at 130 Fulton street constituted a seizable business, if it did, such business did not own the registered trade-marks. They belonged to Saxlehner, in whose name they were registered. Doubtless the registrations were physically seizable, but we hold that those of 1909 were never seized at all. Whether the attempted seizure of a registered trade-mark solely by filing notice with the Commissioner of Patents would be effective is a point not now necessary to decide.

But because plaintiff cannot in this court rely on any so-called common-law rights against a fellow New Yorker, because it is not shown that plaintiff's predecessor had lawful right to register under the act of 1881, and because plaintiff does not own the registrations of 1909, the decree is reversed, and cause remanded, with directions to dismiss the bill, with costs in both courts.