KREM-KO CO. v. R. G. MILLER & SONS, Inc.

No. 21.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1934.

Usina & Rauber, of New York City, and Bristol & White, of New Haven, Conn. (Wilkinson, Huxley, Byron & Knight, Geo. L. Wilkinson, Chas. L. Byron, and Ralph Munden, all of Chicago, Ill., of counsel), for appellant.

Cummings & Lockwood, Raymond E. Hackett, and John D. Walker, all of Stamford, Conn., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff makes a chocolate syrup v 'ich is mixed with milk to make a chocolate drink called Krim-Ko. It has distributors who are allotted certain territory within which they provide dealers with Krim-Ko to sell to the public. The drink when ready for sale by the distributors is placed by them in a wide-mouthed transparent glass bottle which is the subject of United States Design Patent No. 79,925, granted to the plaintiff on November 19, 1929, as the assignor of George F. Gallagher who was its president. All Krim-Ko has since been distributed in the bottle of this patent. Though the plaintiff has another chocolate drink called "Five-O" which is made to sell at five cents a bottle, we are here concerned only with Krim-Ko which is made of a better grade of milk and is to be sold to the public at 10 cents a bottle. It requires a higher percentage of butter fat in the milk used and contains ingredients which make it unable to compete in price with a 5-cent chocolate drink.

The defendant was the exclusive distributor for the plaintiff of Krim-Ko in the states of Rhode Island and Connecticut and the county of Hampden, in Massachusetts, from September 10, 1927, to September 30, 1931. It made and sold large quantities of Krim-Ko within its territory during this time, but in 1931 found that its business was decreasing, owing to competition from manufacturers of chocolate drinks which were sold to the public at 5 cents a bottle. It made known to the plaintiff its desire to terminate its connection as distributor and the agreement of Sep-

tember 10, 1927, under which it became the plaintiff's distributor was canceled by an agreement to that effect, dated September 30, 1931. On the latter date, the defendant had on hand about $20,000 worth of Krim-Ko bottles which it had purchased to use as the distributor for the plaintiff. Nothing was said in the written agreement of September 30, 1931, in regard to the disposition to be made of these bottles. The plaintiff, however, orally offered to use its best efforts to enable the defendant to dispose of them. So far as appears, however, nothing came of this offer.

Soon after the defendant ceased to be the plaintiff's distributor it began to make and sell a chocolate drink called "Chocolate Highball" and one called "Dairo." Both sold at retail for 5 cents a bottle and both were put in the Krim-Ko bottles the defendant had on hand. The only change in the container was the grinding off of the word "Krim-Ko" which appeared in a triangle on the face of the bottle and the use of caps of a different color and inscription with which to seal the bottles. This conduct of the defendant led to the bringing of this action.

The design patent of the plaintiff covers a bottle, or similar article, in the general shape of the well known glass milk bottle. It is, however, proportionately somewhat longer; has vertical flutes which run from the bottom well up beyond the point where the bottle is narrowed to form the neck and end evenly just below a protruding flange which encircles the neck a short distance below the lip which is designed to hold the crimp of a cap in the form of a crown seal. Upon the face of the bottle is an equilateral triangle having the apexes of its angles slightly rounded. It is placed with one of its sides parallel to the plane of the bottom of the bottle and above the apex of the opposite angle which was placed at a point a little more than half way from the top to the bottom of the bottle. Taken separately all of the elements of the bottle are old. But that alone does not invalidate the design patent. Graff, Washbourne & Dunn v. Webster (C. C. A.) 195 F. 522. That there is but a simple grouping of these old elements does not negative invention either for simplicity may be the height of art. Of necessity, the lack of definite standards of comparison makes it difficult to characterize the inventive features necessary to a valid design patent except in terms of broad generalization. There must be originality which is born of the inventive faculty. Smith v. Whitman Saddle Co., 148

U. S. 678, 13 S. Ct. 768, 37 L. Ed. 606. Certainly the completed whole must rise above the commonplace. Strause Gas Iron Co. v. Wm. M. Crane Co. (C. C. A.) 235 F. 126. There must be more than mere mechanical skill. Steffens v. Steiner (C. C. A.) 232 F. 862. If it can fairly be thought that a routine designer of the ordinary knowledge and experience of a good workman at his trade would, in all likelihood, put together such a grouping of old elements just as a part of the usual work of the day whenever the desire so to do was present there is no invention; and that is the situation here.

Mr. Gallagher consulted with some of the employees of a glass company which manufactured bottles; gave them several bottles which had some of the features he desired to have embodied in the bottle he wanted made; told them generally what kind of a bottle he wanted; and the glass company then made up a wooden model for him to see. It later provided him with a drawing which showed the design he patented. All this seems to be no more than what a man, who wanted to have bottles made for a particular use by his company, would be apt to do in ordering the bottles of a manufacturer. At least, he made no nearer approach to inventive genius than would appear to be possessed by any competent business man who desired to have a bottle made in which to sell his company's product to the public and was willing to take the time and trouble to have a few old features embodied in it.

The part of the plaintiff's case which is grounded on the claim of unfair competition is not, of course, defeated by the holding that its design patent is invalid. During the time it was the plaintiff's distributor in the territory mentioned, the defendant was active in disposing of Krim-Ko. It sold 18,246 cases in 1929, 31,149 cases in 1930, and 12,036 cases in 1931 up to the time its contract was canceled. It spent about $10,000 in advertising the product and featured the Krim-Ko bottle already described. But there is no finding and no sufficient evidence to warrant one that chocolate milk drinks and Krim-Ko were associated in the mind of the public in this territory as one. On the contrary, there were about a dozen other chocolate milk drinks in this territory selling under other distinctive trade-names and Krim-Ko was steadily losing ground in competition with them before the defendant took the field with its own products. The record shows this loss of trade in Krim-Ko was not confined to the defendant's territory but was

general and was due to its inability to compete with the cheaper chocolate milk drinks. Some of these cheaper drinks were sold in bottles slightly smaller than the standard Krim-Ko bottle. By using the Krim-Ko bottles it had on hand, the defendant had to sell more of its product per bottle than some competitors did but whether or not that would bring about sufficiently increased sales to offset any theoretical loss per sale does not appear. At any rate, the opportunity to use a $20,000 stock of bottles which would otherwise keep that amount of capital tied up, perhaps indefinitely, was at least a plausible excuse for putting out the new drinks in the old bottles and ample to justify the conclusion of the trial judge that the defendant was moved to do it for that purpose rather than by any fraudulent motive to palm its drinks off as Krim-Ko. Before the bottles were used for the new drinks the name Krim-Ko which had appeared within the triangle on each bottle was ground off so that only a scar remained. The Krim-Ko caps were not used but others of different color and with different inscriptions which, if read, would show that the chocolate drink was neither Krim-Ko nor a product of the plaintiff. The number of the design patent was blown in the bottom of these bottles but no one claims that that deceived anybody. There was nothing to afford to anyone the means for palming off the new drinks as Krim-Ko except the design of the bottle and the fact that the new drinks were chocolate milk drinks.

■■■ The gist of an action for unfair competition is fraud, and this is a question of fact to be proved. Miller Rubber Co. v. Behrend (C. C. A.) 242 F. 515. It was shown that in a few instances when a representative of the plaintiff called for Krim-Ko at places where chocolate drinks were sold to the public he was given the defendant's drinks in the Krim-Ko bottle with the name ground off. But whatever significance should be given to such evidence, these isolated instances are not to be charged to the defendant unless it appears that the public was deceived, and deceived by the means for such deceit with which the defendant provided these sellers. It may be said that these bottles did make it possible for unscrupulous dealers to palm off the defendant's drinks as Krim-Ko provided the public had learned to associate Krim-Ko with this bottle. But that essential fact is so lacking and the legitimate reason the defendant had for using the bottles is so persuasive to negative fraud that the essence of a charge of unfair competition was not proved. Indeed,

it is difficult to understand why this defendant should have had any reason to dress up its product in the clothes of Krim-Ko. To whatever extent the name Krim-Ko may have been instilled into the public mind, to just that extent the public must have been led to believe that it cost 10 cents a bottle. There is no doubt whatever but that the defendant's desire to cancel its contract for the distribution of Krim-Ko was due to its belief that the field of 10-cent chocolate drinks was unprofitable. It would tend to defeat its purpose to enter the 5-cent field to bottle its drinks in such a way that they looked like 10-cent drinks unless in some way a bottle that meant a 10-cent drink to the public was conspicuously labeled 5 cents. There is no evidence that the defendant or any of its dealers did this. On the contrary, it is plain that success in selling the new drinks was thought to depend on getting away from the 10-cent chocolate drink which the Krim-Ko bottle represented, if it represented anything at all in the public mind in respect to a chocolate milk drink. Unless the bottle moved the public in any degree to buy the defendant's drinks because they were thought to be Krim-Ko there was no unfair competition. The bottle was certainly free to be used, since the design patent is invalid, by any one in which to sell anything except a chocolate drink. And it was equally free for use by any one in which to sell a chocolate drink so long as the public was not deceived into believing that the chocolate drink was Krim-Ko or a product of the plaintiff. Compare, Crescent Tool Co. v. Kilborn & Bishop Co. (C. C. A.) 247 F. 299; Coca-Cola v. Glee-Nol Bottling Co. (C. C. A.) 221 F. 61; Gilbert Co. v. Shemitz et al. (C. C. A.) 45 F.(2d) 98; Miller Rubber Co. v. Behrend, supra. In Moxie Co. v. Daoust (C. C. A.) 206 F. 434, upon which the plaintiff counts much, there was no fair explanation of the defendant's use of a bottle closely resembling the one which was "of a distinctive shape for many years associated with the beverage Moxie." The fraudulent imitation of the plaintiff's product to deceive the public was there apparent. Here it is nonexistent and the action must fail since the defendant does not palm off its goods as those of the plaintiff. Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 S. Ct. 609, 49 L. Ed. 972.

■■ One other circumstance should be noticed. At about the time this case was decided below, the defendant ordered of the same bottle manufacturer who made the Krim-Ko bottles, an additional supply of bottles of the same size and design except that the triangle

with the name Krim-Ko was omitted, and instead there was a horizontal panel near the base bearing the name and address of the defendant. These were supplied and, through an error of the manufacturer, the first lot shipped had the design patent number on the bottom of each bottle. When this error was discovered the manufacturer acknowledged that the mistake was its own, offered the plaintiff whatever amends it desired, took back and destroyed the bottles, and supplied new ones in their stead without the patent number. The reasons given by the defendant for continuing to use this type of bottle were that its washing facilities were designed to take them and that it would be detrimental to its business to change the size of the bottle so that its product would have to be sold in different bottles until the old ones were used up. The average life of such a bottle is five or six years. We need not, and do not, hold that these considerations would justify continuing to use this type of bottle if the use of the bottles in stock had resulted in unfair competition by causing the palming off of the defendant's product as that of the plaintiff. But without that, it is obvious that continued use of the bottles and of the new bottles can have no such result and will not be unlawful.

Affirmed.